CLEMENT S. JACOBUS, Respondent, v. WILLIAM H. COLGATE, Appellant.

Statutory construction — statutes are to be construed only as prospective unless, there is clear legislative expression that they shall be retroactive — actions for injuries to real property lying without the state — when joinder of cause of action for injury to personal property and to real property without the state renders complaint demurrable.

1. The general rule is that statutes are to be construed as prospective only and that it takes a clear expression of the legislative purpose to justify a retroactive application. Changes of procedure, *i. e.*, of the *form* of remedies, are said to constitute an exception, but that exception does not reach a case where before the statute there was no remedy whatever.

2. In determining whether a retroactive operation of a statute was intended by the legislature it is always legitimate to show that one construction would lead to hardships which another would avoid.

3. Until 1913 our courts had no jurisdiction of actions for injuries to real property lying without the state. In respect of a trespass on lands situated abroad there was at the time of the enactment of the statute giving such jurisdiction (Code Civ. Pro. § 982-a) no right of action, since an alleged right which the courts would neither recognize nor enforce did not constitute any right at all in point of

law. Hence this statute is not retroactive and has no application to wrongs committed before its passage.

4. The complaint in addition to an allegation of the destruction of a building alleges that certain personal property contained therein was also destroyed, and seeks to recover therefor. *Held,* that the causes of action are distinct, and the demurrer to the complaint must be sustained on the ground that two causes of action have been improperly united (Code Civ. Pro. § 484, subd. 9), since it must appear even though they arise out of the same transaction that they do not require different places of trial (Code Civ. Pro. § 484), and this requirement has not been satisfied. To make out a misjoinder it is not necessary that the separate causes of action should have been well stated. It is enough that there was an attempt to state them. (*Reilly* v. *Sicilian Asphalt P. Co.*, 170 N. Y. 40, followed.)

*Jacobus* v. *Colgate*, 165 App. Div. 227, reversed.

(Argued January 3, 1916; decided February 22, 1916.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 24, 1914, which affirmed an interlocutory judgment of Special Term overruling a demurrer to the complaint.

The following questions were certified:

1. Has the Supreme Court jurisdiction of the subject of an action, commenced on January 5, 1914, and brought to recover damages for injuries to real property located in another state, which said injuries were incurred on August 13, 1882, notwithstanding that seasonable objection is raised thereto?

2. Does section 982-a of the Code of Civil Procedure confer jurisdiction upon the Supreme Court of the subject of an action brought by a resident of the state of New York on January 5, 1914, for injuries to real property located in another state, which said injuries were incurred on August 13, 1882?

3. Did the legislature of the state of New York intend section 982-a of the Code of Civil Procedure to apply to actions commenced after such section became operative irrespective of the time when the cause of action arose?

4. Does it appear upon the face of the complaint herein that the Supreme Court had jurisdiction of the subject of the action ?

5. Does it appear upon the face of the complaint herein that the same states facts sufficient to constitute a cause of action ?

6. Does it appear upon the face of the complaint herein that two causes of action have been improperly united, viz., a cause of action for injury to real property with a cause of action for injury to personal property ?

7. Does it appear upon the face of the complaint herein that two causes of action have been improperly united, which require different places of trial ?

8. If it appears upon the face of the complaint herein that two causes of action have been set forth, has the Supreme Court jurisdiction of the subject of both of them ?

The facts, so far as material, are stated in the opinion.

*Theodore F. Humphrey* and *George Pratt Ingersoll* for appellant. The demurrer should be sustained on the grounds numbered I and II therein, namely, that it appears on the face of the complaint that the Supreme Court has no jurisdiction of the subject of the action and also that the complaint does not state facts sufficient to constitute a cause of action. (*A. U. Tel. Co.* v. *Middleton,* 80 N. Y. 408; *Brisbane* v. *Penn. R. R. Co.,* 205 N. Y. 431; *B. S. A. Co.* v. *Cam. de Mocambique,* L. R. [App. Cas. 1893] 602; 36 Cyc. of L. & P. 1213; *Society* v. *Wheeler,* 2 Gall. 139; Cooley on Const. Law [7th ed.], 95; *People* v. *Ulster,* 65 N. Y. 308; *Ellenwood* v. *Marietta Co.,* 158 U. S. 105; *Huntington* v. *Attrill,* 146 U. S. 669.) The complaint sets forth but a single cause of action. (*Houghtaling* v. *Houghtaling,* 5 Barb. 379; *Hill* v. *Bartholomew,* 71 Hun, 453; *Gilbert* v. *Pritchard,* 41 Hun, 46; *Howe* v. *Wilson,* 1 Den. 181; *Dunckle* v. *Kocker,* 11 Barb. 387; *Eames* v. *Prentice,* 8 Cush. 337; *Merriman* v. *McCormick,* 86 Wis.

142.) Even if defendant, appellant, is wrong in his contention that the elements of the alleged cause of action set forth in the complaint are inseparable, and the complaint in reality sets up two causes of action, namely, one for injury to real property and one for injury to personal property, then the demurrer must be sustained on grounds numbered III and IV therein, namely, that causes of action have been improperly united both because of their intrinsic nature and also because it appears upon the face of the complaint that they require different places of trial. (*Wait* v. *H. V. R. R. Co.*, 43 Misc. Rep. 304; *Vock* v. *Auterbourn*, 66 Misc. Rep. 222; *Goldberg* v. *Utley*, 60 N. Y. 427; *Cromwell* v. *Truesdell*, 67 App. Div. 502; *Powers* v. *Sherin*, 89 App. Div. 37.)

*Albert Aston* for respondent. An action may be maintained in the courts of this state to recover damages for injuries to real estate situate without the state. (Code Civ. Pro., § 982-a; L. 1913, ch. 76.) Section 982-a, Code of Civil Procedure, is a remedial statute and should be construed to apply to all actions brought after it went into effect, irrespective of the time when the cause of action arose. (*People* v. *Green*, 201 N. Y. 172; *Comm.* v. *Phillips*, 11 Pick. 28; *Jimeson* v. *Pierce*, 78 App. Div. 9; *Hallock* v. *United States*, 185 Fed. Rep. 417; *Larken* v. *Saffarens*, 15 Fed. Rep. 147; *Teele* v. *C. & O. Ry. Co.*, 204 Fed. Rep. 918; *People* v. *City of Syracuse*, 128 App. Div. 702; *Cook* v. *United States*, 138 U. S. 157; *Dennick* v. *R. R. Co.*, 103 U. S. 11; *Thompson* v. *Missouri*, 117 U. S. 379.) There is no misjoinder of causes of action because the facts stated in the complaint constitute only one cause of action. (*Law* v. *McDonald*, 62 How. Pr. 340; *Rockwell* v. *Brown*, 36 N. Y. 207; *Gilbert* v. *Pritchard*, 41 Hun, 45.) Assuming that the facts stated in the complaint constitute more than one cause of action, nevertheless these causes of action are properly united, because they are brought upon claims arising out of the

same transaction and are connected with the same subject of action. (Code Civ. Pro. § 484, subd. 9; *Carpentier* v. *M. L. Ins. Co.*, 93 N. Y. 552; *G. & H. Mfg. Co.* v. *Hall*, 61 N. Y. 226; *McQuerey* v. *Main*, 82 App. Div. 543; *Eagan* v. *N. Y. Transp. Co.*, 39 Misc. Rep. 111; *Schencke* v. *Furst*, 140 App. Div. 435; *Hochman* v. *N. A. G. Co.*, 73 Misc. Rep. 454.) This is an action personal and transitory in its nature and, therefore, triable in the Supreme Court of this state, where the plaintiff resides and jurisdiction of the defendant has been obtained. (*Brisbane* v. *Penn. R. R. Co.*, 205 N. Y. 431; *Livingston* v. *Jefferson*, 1 Brock. 203; *Little* v. *C., S. P., M. & O. Ry. Co.*, 65 Minn. 48; *P. M. & T. Co.* v. *B. & O. R. R. Co.*, 217 Fed. Rep. 665; *A. U. T. Co.* v. *Middleton*, 80 N. Y. 408; *Houghtaling* v. *Houghtaling*, 5 Barb. 379; *Hill* v. *Bartholomew*, 71 Hun, 453; *Whatling* v. *Nash*, 41 Hun, 579; *Stone* v. *United States*, 167 U. S. 178; *Barney* v. *Burstenbinder*, 7 Lans. 210.)

CARDOZO, J. This case comes here on a demurrer to a complaint. The plaintiff's assignors were the owners of a milling plant in Kansas. More than thirty-three years ago, in August, 1882, the defendant, according to the averments of the complaint, "wilfully and wantonly" set fire to the plant and destroyed the mill and its contents. In December, 1913, the owners of the plant assigned their cause of action to the plaintiff, who is a resident of this state. In January, 1914, the summons was served.

The first question to be determined is whether the courts of New York have jurisdiction of the action. For the moment we lay aside the allegations of injury to the contents of the mill and view the action as one for injuries to the building only. There is no doubt that until 1913 our courts had no jurisdiction of actions for injuries to real property lying without the state (*Brisbane* v. *Penn. R. R. Co.*, 205 N. Y. 431). Nothing inconsistent with

that view was held in *Sentenis* v. *Ladew* (140 N. Y. 463). All that was there determined was the power, where other jurisdiction fails, to award judgment for the costs (*Gaines* v. *City of New York*, 215 N. Y. 533). In 1913, however, the Code of Civil Procedure was amended by adding the following provision (sec. 982-a): "An action may be maintained in the courts of this state to recover damages for injuries to real estate situated without the state, or for breach of contracts or of covenants relating thereto, whenever such an action could be maintained in relation to personal property without the state." The trespass complained of here occurred in 1882. We must, therefore, say whether the statute has any application to wrongs committed before its passage.

The general rule is that statutes are to be construed as prospective only (27 Halsbury's Laws of England, p. 159). It takes a clear expression of the legislative purpose to justify a retroactive application (*Isola* v. *Weber*, 147 N. Y. 329; *O'Reilly* v. *Utah, N. & C. Stage Co.*, 87 Hun, 406, 412; *Matter of Protestant Episcopal Pub. School*, 58 Barb. 161; *United States* v. *Heth*, 3 Cranch, 399, 413). Changes of procedure, *i. e.*, of the *form* of remedies, are said to constitute an exception (*Lazarus* v. *Met. E. R. Co.*, 145 N. Y. 581; *Laird* v. *Carton*, 196 N. Y. 169), but that exception does not reach a case where before the statute there was no remedy whatever (*Kelley* v. *B. & M. Railroad*, 135 Mass. 448; *Reinhardt* v. *Fritzsche*, 69 Hun, 565; *Shipman* v. *Treadwell*, 208 N. Y. 404, 415; *Germania Savings Bank* v. *Village of Suspension Bridge*, 159 N. Y. 362). To supply a remedy where previously there was none of any kind, is to create a right of action. We need not dwell upon the question whether before this amendment of the Code, a trespass on foreign lands was recognized by our law for any purpose as constituting a wrong (Dicey Conflict of Laws [2d ed.], pp. 31, 32). If we recognized it as a wrong, we gave no redress for it. If the injured owner had suffered an

impairment of his right, he had none the less no right of action. He may have had one under the laws of some other state or country. He had none under our laws. His cause of action till then was local, and limited by the boundaries of the state where the wrong was done. It has now become transitory, giving rise to "an *obligatio,* which like other obligations follows the person, and may be enforced wherever the person may be found" (*Slater* v. *Mex. Nat. R. R. Co.,* 194 U. S. 120, 126). When the cause of action was local, it was not in this jurisdiction a cause of action at all. It became a cause of action by force of the statute which made it transitory. "A cause of action is the right to prosecute an action with effect" (*Patterson* v. *Patterson,* 59 N. Y. 574, 578; *People ex rel. Pells* v. *Supervisors of Ulster Co.,* 65 N. Y. 300, 308). "It is not possible for one at the same time to have a cause of action and not to have the right to sue" (*Walters* v. *City of Ottawa,* 240 Ill. 259, 263). We are reminded by Holland (Jurisprudence [11th ed.], p. 318) of the definition of the Institutes (Lib. IV, tit. VI): "*Actio autem nihil aliud est quam jus persequendi judicio quod sibi debetur.*" In any community which has developed beyond the stage of self-help, a violated right gives rise to a right of action (Holland, *supra*). The primary or antecedent right may be distinguished in analysis from the right of action for its infringement, but the normal exercise of the state's power is through the agency of the courts, and hence a right which when violated does not create a right of action, is shorn of most of the incidents that make a legal right of value (Holland [11th ed.], p. 318; 1 Cooley on Torts, p. 20). For this reason it is that statutes which take away every remedy for past wrongs, as distinguished from statutes which merely change the remedy, are condemned as unconstitutional (*Parmenter* v. *State of N. Y.,* 135 N. Y. 154, 166; *Gilbert* v. *Ackerman,* 159 N. Y. 118; *Soper* v. *Lawrence Bros. Co.,* 201 U. S. 359, 370; *Mulvey* v. *City of Boston,* 197 Mass. 178). The

destruction of every remedy destroys the cause of action. By parity of reasoning, the grant of a remedy where none of any kind was available, is equivalent in substance to the creation of a cause of action. We do not say that statutes of the latter class are unconstitutional because retroactive. To discuss the limits of constitutional power in that regard would lead us far afield. What we emphasize now is the distinction between statutes which merely change the procedure for the enforcement of a right and statutes which supply a remedy by which a right for the first time becomes enforceable.

This distinction was recognized by the House of Lords in a leading case in which the jurisdiction of the English courts in actions for trespass on foreign lands was considered with the amplest learning. In *British South Africa Co.* v. *Companhia de Mocambique* (L. R. [1893] A. C. 602) the question to be determined was the effect of rules of court, adopted under the Judicature Acts of 1873, which abolished the technical rule of local venue. The holding was that the abrogation of that rule did not enlarge the jurisdiction in respect of injuries to foreign lands. The rule of local venue, it was held, was a rule of procedure. It determined the county or section of the realm in which the suitor must proceed. It assumed that jurisdiction was present, but defined the manner of its exercise. On the other hand, the rule that where the matter was local and arose outside the realm, there was no remedy in the courts of England, was held to be in the fullest sense a rule of jurisdiction. The House of Lords held that the Judicature Acts were not intended to confer upon the owners of foreign lands " a right of action in this country which they would not otherwise have possessed." Lord HERSCHELL pointed, out in his opinion that "·a person whose lands situate in this country were trespassed upon always had a right of action in respect of the trespass; " and then he added in words precisely applicable here: " But in respect of a

trespass to lands situated abroad there was no right of action, for an alleged right which the courts would neither recognize nor enforce did not constitute any right at all in point of law." (See also *Ellenwood* v. *Marietta Chair Co.*, 158 U. S. 105; *Huntington* v. *Attrill*, 146 U. S. 657, 669.)

This conception of a right of action is criticised in the dissenting opinion. We are told that "when one without permission enters upon the property of another" in a foreign state, "and wrongfully sets fire to the buildings thereon and destroys them, it is evident that a wrong has been done, and that the *right* of the owner has been violated, and the owner has a *right* to redress." But that is precisely what the owner did not have until the amendment of the statute. He had, if you please, a moral right to redress, but he had no legal right to redress except in the state where the wrong was done. To give him a right to redress in this state was the very purpose of the amendment. Even now the wrong has not been transformed into an offense against our laws. The foreign has not been transformed into a domestic tort (*Slater* v. *Mex. National R. R. Co.*, 194 U. S. 120, 126). The statute does not "vindicate a pre-existing right" under our law; it does not redress a pre-existing wrong. The primary wrong is still the violation of the law of the state where the act was done (*Phillips* v. *Eyre*, L. R. [4 Q. B.] 225, 239; *Slater* v. *Mex. National R. R. Co.*, *supra;* *Wooden* v. *Western N. Y. & P. R. R. Co.*, 126 N. Y. 10, 14; Wharton Confl. Laws, § 478b). Out of the foreign tort there once grew a right of action territorial and local, which our courts would not enforce. Out of the same tort there now grows a transitory right of action which our courts will enforce. The right of action has not merely been changed; so far as our law is concerned, it has been created. But the wrong, the violation of the primary right, which it redresses, is defined by the foreign law.

It is not accurate, therefore, to say even to-day that the primary right is one established by the law of New York. But even if the primary right were established by our law, a statute creating a remedy where there had hitherto been none, would not for that reason be retrospective. Before the amendment of the Constitution in 1894, the negligent killing of a relative was a wrong to his dependents (*Radley* v. *Leray Paper Co.*, 214 N. Y. 32, 35). The damages to be recovered could not exceed $5,000, the right of action was limited, but the primary right had been declared. The amended Constitution did not create a new wrong, but abolished the limitation upon the remedy for an existing wrong. Yet our ruling was that the amendment did not enlarge the right of action for wrongs already done (*Isola* v. *Weber, supra*). It did not merely change procedure; it defined the remedial right.

We hold, therefore, that section 982-a of the Code is not a retroactive statute. It is hardly necessary to dwell upon the distinction between this case and cases where a jurisdiction already residing in one court is transferred or added to another (*People* v. *Green*, 201 N. Y. 172). In such circumstances there is merely a regulation of the procedure for the vindication of a right already legally enforceable. The decisive consideration here is that until the statute was adopted, no remedy of any kind was available in any court. It is not a sufficient answer to say that the old rule was unjust and technical. We may concede that it was. That is doubtless why the legislature has changed it for the future. The canons of statutory construction remain the same whether the change was wise or foolish. But if considerations of expediency are to control us, we shall see that the legislature had many reasons for refusing to establish a right of action in respect of past wrongs. It may well be that a retrospective statute would work greater hardships than any that it would avoid. The plaintiff complains of a trespass committed thirty-three years ago. The rule is that

the Statute of Limitations does not begin to run against a suitor until the state has supplied him with a tribunal in which his suit may be maintained (*Parmenter* v. *State of N. Y.*, 135 N. Y. 154, 163; *O'Hara* v. *State of N. Y.*, 112 N. Y. 146, 155; *Crapo* v. *City of Syracuse*, 183 N. Y. 395; *Brehm* v. *Mayor, etc., of N. Y.*, 104 N. Y. 186; Code Civ. Pro. § 406). A cause of action does not accrue until its enforcement becomes possible. To hold that this statute is retroactive would, therefore, be to give a remedy for ancient and forgotten wrongs. It is conceivable, though far from certain, that section 390-a of the Code might apply to such action, and afford in some cases a rule of limitation (Code Civ. Pro. § 390-a). That section, however, has at best a limited application. It incorporates into our law the period of limitation of the state where the cause of action arose, but only when the cause of action did not originally accrue in favor of a resident of this state. Other restrictions, which we are not required at this time to approve or to condemn, have been placed upon it by judicial construction (*Isenberg* v. *Rainier*, 145 App. Div. 256). At best, therefore, that section would mitigate in a narrow class of cases the rigor of a retroactive operation of the statute in controversy. Emphasis is laid on the language of the statute (Code Civ. Pro. § 982-a) to the effect that the action may be maintained "whenever such an action could be maintained in relation to personal property without the state." But that provision has no bearing on the period of limitation. All that it means is that the *jurisdiction* shall be the same whether the subject-matter is real estate or personalty. It is true, of course, that the defense of the Statute of Limitations is not the primary question before us. We have a right none the less to consider it in determining whether a retroactive operation of this statute was intended by the legislature. It is always legitimate to show that one construction would lead to hardships which another would avoid

(*Suburban R. T. Co.* v. *Mayor, etc., of N. Y.,* 128 N. Y. 510, 523; *Reinhardt* v. *Fritzsche,* 69 Hun, 565, 570). We are satisfied that the legislature would have been unwilling to give a remedy for past wrongs without limitation of time, and that to avoid that consequence, we must treat the statute as prospective.

If the action fails to the extent that it is brought to recover damages for injuries to real estate, the question remains whether to the extent that it is brought to recover damages for injuries to personal property it may not be maintained. The complaint alleges that a stock of flour, wheat, flour sacks and bran sacks, and also office furniture, stationery, books of account, and other personal property were contained " in and about said building or on the premises of said milling plant." All this personal property is stated to have been destroyed. On the one side, the plaintiff contends that there are two causes of action, — a cause of action for the injury to the realty, and another for injury to the personal property upon it. On the other side, the defendant contends that there is but a single cause of action for injury to the realty, and that the injury to the personal property is merely aggravation of the damages. We think our decision in *Reilly* v. *Sicilian Asphalt P. Co.* (170 N. Y. 40) requires us to hold that two causes of action have been stated. In that case we held that where a single act works injury alike to one's person and to one's property, the causes of action are distinct. We pointed out that they are governed by different limitations (170 N. Y. at p. 44). Like considerations are applicable here. A single act has injured realty and personalty. One cause of action is local and the other transitory. The act is single, but its consequences are divisible. (See also: *Stone* v. *United States,* 167 U. S. 178, 182; *Barney* v. *Burstenbinder,* 7 Lans. 210.) We do not overlook decisions referred to by the defendant in which averments of injury to personalty were held to be merely incidental (*Ellenwood* v. *Marietta*

*Chair Co.,* 158 U. S. 105; *Houghtaling* v. *Houghtaling,* 5 Barb. 379; *Hill* v. *Bartholomew,* 71 Hun, 453; *Whatling* v. *Nash,* 41 Hun, 579). In all those cases a wrongful entry upon land was the gist of the action. The plaintiff could not prove the injury to the personal property "without also proving the trespass upon real estate" (*Ellenwood* v. *Marietta Chair Co., supra*). But here a wrongful entry is not even alleged. The defendant set fire to the property, but he may have done this without going upon the land at all. It does not even appear that the fire was applied to the buildings first, and that it then spread to their contents. The personal property is described, not only as "in or about the buildings," but also as "on the premises" of the plant. The allegations moreover permit the inference that it was substantial in quantity and value. We see no reason why an action for injury to that property may not be litigated in our courts.

The defendant makes the point that if two causes of action have been stated they have been improperly united. It is true that the claims arise out of the same transaction (Code Civ. Pro. § 484, subd. 9). That by itself, however, is not enough. It must also appear that they do not require different places of trial (Code Civ. Pro. § 484). This requirement has not been satisfied, and hence the objection of misjoinder must prevail. To make out a misjoinder it is not necessary that the separate causes of action should have been well stated. It is enough that there was an attempt to state them (*Brock* v. *Poor,* 216 N. Y. 387; *Todaro* v. *Somerville Realty Co.,* 138 App. Div. 1, 3; *Mahler* v. *Schmidt,* 43 Hun, 512, 515).

The order should be reversed, with costs in all courts, and the demurrer sustained, with leave to the plaintiff, on payment of costs within twenty days, to amend his complaint; the first, third and eighth questions certified should be answered in the negative, and the seventh question in the affirmative; and it is unnecessary to answer the other questions.

SEABURY, J. (dissenting). The answers to the questions certified to this court depend upon the construction to be given to section 982-a of the Code of Civil Procedure. That section is the result of an amendment made to the law in 1913 (Laws of 1913, chap. 76). Prior to its enactment it was held that the courts of this state had no jurisdiction of actions for injuries to real property lying without the state. (*Brisbane* v. *Pennsylvania Railroad Company*, 205 N. Y. 431, and cases therein cited.) The reason for this conclusion was, not that the owner's rights were not violated or that the owner in such a case did not have a cause of action in the jurisdiction where the property was situated. The true reason for this conclusion was a very technical one that had no relation to the justice of the rule or the rights of the parties.

The development of the law in relation to local and transitory actions shows the nature of the technical rule which operated to deny redress to one whose real property situated in another jurisdiction was injured. The common law originally regarded all actions as local. The early rule required that the venue should be correctly stated. In other words, the place where the fact in issue arose was required to be alleged. This rule arose out of the early practice which required a case to be tried by a jury of the vicinage who were presumed to have knowledge of the facts and the parties. When there were several issues and the facts alleged in relation to them arose in different places each issue would be tried by a jury summoned from the place in which the facts in dispute were stated to have arisen. (*British South Africa Company* v. *Companhia de Mocambique*, L. R. [1893] A. C. 602, 617.) When juries ceased to be drawn from the place where the fact took place and from among those who were supposed to be familiar with the circumstances "the law began to discriminate between cases in which the truth of the venue was material and those in which it was not so." (*British South Africa*

*Case, supra,* p. 618.)  The discrimination resulted in the distinction between transitory and local actions and the rule that the pleader should lay the venue truly was held to relate only to local actions.  To meet the difficulty which arose when the local matter occurred out of the realm the courts invented the fiction which permitted the pleader to lay the venue in any county in England.  This fictional averment having been made the courts determined when the defendant should be permitted to put it in issue.  For some time there was uncertainty whether this fictional averment was traversable in an action for injuries to foreign real estate, but the courts finally concluded that it was traversable in this character of cases because such an action was not intended to be protected by the fiction.  (*British South Africa Co. Case, supra; Livingston* v. *Jefferson,* 1 Brock. 203; 15 Fed. Cases 8,411; *Little* v. *Chicago, St. Paul, Minneapolis & Omaha Ry. Co.,* 65 Minn. 48, 50.)

Chief Justice MARSHALL, in *Livingston* v. *Jefferson* (*supra*) made it clear that authority was the only support of the rule and he frankly said: "I have not yet discerned a reason, other than a technical one, which can satisfy my judgment."  This artificial and technical rule, working injustice as it often did, did not escape the efforts of Lord MANSFIELD to correct it.  Thus in *Mostyn* v. *Fabrigas* (1 Cowp. 161; 2 Smith's L. C. [9th ed.] 916) an effort was made to bring the rule of law in accord with reason and justice, but the effort proved futile when the decision of Lord MANSFIELD was overruled in *Doulson* v. *Matthews* ([1792] 4 Term R. 503), which re-affirmed the old distinction.  Speaking of this futile effort of Lord MANSFIELD, Chief Justice MARSHALL said: "One of the greatest judges who ever sat on any bench, and who has done more than any other to remove those technical impediments which grew out of a different state of society, and too long continued to obstruct the course of substantial justice, was so struck with the weakness of the distinc-

tion, between taking jurisdiction in cases of contract respecting lands, and of torts committed on the same lands, that he attempted to abolish it." (*Livingston* v. *Jefferson, supra.*) In this state the rule which Chief Justice MARSHALL adopted with reluctance, solely in deference to authority, became the settled rule. In the *Brisbane Case* (*supra*) where the authorities are referred to, the harshness and technicality of the rule are commented upon and Chief Judge CULLEN said: "Were the question an open one, I would favor the doctrine that our courts have jurisdiction of actions to recover damages for injuries to foreign real estate." (p. 434.) Many other judicial criticisms of the rule could be pointed out, but I think it is apparent from what has been said that the rule which precluded the courts of this state from granting redress in a case of this character was purely a technical rule relating to the law of venue, which was unjust in its application and rested for its support upon authority and not upon reason. It was to remedy this defect in the law of procedure, as specifically pointed out by Chief Judge CULLEN in the *Brisbane* case, that the legislature of this state enacted section 982-a. That section provides as follows:

"An action may be maintained in the courts of this state to recover damages for injuries to real estate situated without the state, or for breach of contracts or of covenants relating thereto, whenever such an action could be maintained in relation to personal property without the state."

The questions certified to us turn upon whether this statute is retroactive in its effect. The answer to these questions depends in turn, upon the answer to the question whether this section creates a right or prescribes a cause of action or remedy for the violation of an existing right. If the statute relates to the law of procedure and merely prescribes a remedy it is to be given retroactive effect. (*Lazarus* v. *Metr. E. R. Co.*, 145 N. Y. 581; *Laird* v. *Carton*, 196 N. Y. 169.) It is conceded that the statute creates a remedy and authorizes a cause of action. The

question to be determined is whether it does *only* this, or whether, in addition to this, it also creates a right which did not exist before. When it is read in the light of its history, which has been briefly referred to above, I think that it is apparent that it merely creates a remedy for an antecedent right. Notwithstanding the technical rule relating to the law of venue, that existed before this statute was enacted, the *right* of the person whose property was injured to redress was recognized, although the defect in our law of procedure precluded the person injured from seeking redress in the courts of this state. Thus, in *Sentenis* v. *Ladew* (140 N. Y. 463, 465) it was held that, notwithstanding the general rule that an action for injuries to real property must be brought in the forum *rei sitæ*, a judgment in an action to recover damages for injuries to real property in another state was neither void nor voidable for want of jurisdiction, and was binding and conclusive upon the parties, when the Supreme Court of this state acquires jurisdiction of the parties, and the defendant appears, answers and goes to trial without objecting to the jurisdiction of the court. The decision in this case recognizes that the plaintiff in a case of this character has a *right* to redress, and that the rule against entertaining such an action was merely a requirement of the law of procedure which might be waived by consent of the parties. The decision of this court in *Sentenis* v. *Ladew* (*supra*) cannot be disposed of on the theory that it merely determined as to an award of costs, because in the opinion of Judge MAYNARD, in which all the court concurred, it is said: "We entertain no doubt that the Supreme Court had jurisdiction to render the judgment awarded in this action. Under the Constitution it has general jurisdiction in law and equity, and of the class of actions to which this case belongs. It is not prohibited by any statute from entertaining jurisdiction of a suit for damages for injuries to real property in another state."

When one without permission enters upon the property

of another and wrongfully sets fire to the buildings thereon and destroys them, it is evident that a wrong has been done, and that the *right* of the owner has been violated and the owner has a *right* to redress. It may be that the law of procedure of a particular jurisdiction fails to give a remedy when objection is made to the jurisdiction of the court, but the existence of the *right* to redress in such a case seems to me to be apparent. It does not follow from the fact that in this jurisdiction the owner had no cause of action or remedy when objection to the jurisdiction of the court to entertain the action is made, that the owner's right of property has not been invaded by such a wrong. The statute expressed in section 982-a assumes that the owner's *rights* are violated when injury is done to his real property without the state or when there is a breach of contract "relating thereto." It does not assume to create any new right but it does plainly give a remedy in this jurisdiction by authorizing the bringing of an action to vindicate the pre-existing right and to redress an existing wrong. To assert that the statute creates a *right of action* is merely to affirm that it prescribes a remedy by action. There is a manifest and important difference between a statute which creates a new statutory right and a statute which prescribes a " cause of action," or remedy for an existing right. For example, a statute such as Lord Campbell's Act which gave to the widow and next of kin of a person killed by the wrongful act of another the right to recover damages from the wrongdoer, conferred a right which did not exist at common law and it also prescribed a remedy by which that right might be enforced. The present statute is different. Before this statute was passed our law, in common with the law of every civilized state, recognized that a trespass upon the real property of the owner and burning down the buildings thereon in whatever jurisdiction the property was situated constituted a wrong and that such a wrongful act violated the *right* of the owner and that the

owner had a *right* to redress.   The law of this jurisdiction did not prohibit the granting of a remedy even in this state (*Sentenis* v. *Ladew, supra*), although owing to the technical rule of procedure governing such an action the right to redress in this state could be defeated. (*Brisbane Case, supra.*)   The statute now under consideration attempted to correct the existing defect in our law of procedure by providing that " an action may be maintained in the courts of this state " in such a case. In so providing it created a remedy or authorized a cause of action, but it did not create a substantive right.   The injury to the real property of the owner, or a breach of contract relating thereto, was a violation of the right of the owner before the statute was passed.   The purpose of section 982-a, as I conceive it, was to remove the limitation upon the right to redress and to give the owner a cause of action or remedy in such cases, in this jurisdiction, for his violated right.   In considering this subject we must be careful not to confuse *rights* with *remedies for the violation of rights.*   It has been well said, that " while in theory actions should correspond precisely with rights, in practice they fail to do so, and thus many rights are without the corresponding remedy.   Hence, in practical jurisprudence, we have the distinction, unknown to the theory of right, between actionable and non-actionable, or, as they are otherwise called, between juridical and non-juridical rights — a distinction in theory extremely important to observe, and with reference to practice no less so; for there is no fallacy more common, or more pernicious in its consequences than to infer, from the non-existence of an action or remedy, the non-existence of the right."   (Critical History of Modern English Jurisprudence by George H. Smith, p. 82.) Rights and remedies are oftentimes not co-extensive.

Thus the Statute of Limitations affects the remedy and not the right, and although the remedy may be barred the right still exists.   (*Johnson* v. *Albany & S.*

*R. R. Co.*, 54 N. Y. 416, 424; *Crane* v. *Powell*, 139 N. Y. 379.) It is for this reason that a new promise to pay a debt barred by the Statute of Limitations is enforceable, although the new promise is founded upon no new consideration. Many other illustrations could be given, but the one mentioned illustrates the principle sufficiently. To argue that there can be no right because there is no remedy is to invert the maxim that there is no wrong without a remedy and to give to it a meaning different from that which it has always been supposed to possess. The spirit of this maxim is that where there is a *right* there should be a remedy. It was in this sense that Lord HOLT pointed out in *Ashby* v. *White* (2 Lord Raym. 953; 1 Smith L. C. 464) that "it is a vain thing to imagine a right without a remedy." Mr. Broom remarks that "The maxim *ubi jus ibi remedium* has been considered so valuable, that it gave occasion to the first invention of that form of action called an action on the case." (Broom's Legal Maxims, p. 147.) The Statute of Westminster 2 (13 Edw. I, ch. 24), which was declaratory of the common law on this subject and was passed to quicken the diligence of the clerks in chancery, who were too much attached to ancient precedents, enacted that "whensoever from thenceforth a writ shall be found in the chancery, and in a like case falling under the same right, and requiring like remedy, no precedent of a writ can be produced, the clerks in chancery shall agree in forming a new one; and, if they cannot agree, it shall be adjourned till the next Parliament, where a writ shall be framed by consent of the learned in the law, lest it happen for the future that the court of our lord the king be deficient in doing justice to the suitors." The spirit of the maxim is that if there was no appropriate remedy one should be devised that would vindicate the right. This conception seems to me to be opposed to that which asserts that if there is no remedy it follows that the person injured has no right. Such a construction kills the spirit of the maxim and gives

to it a meaning which is the opposite of that which it was intended to convey. This maxim, however, is not of universal application and its application often becomes impossible under our system of procedure, especially where jurisdictional questions are involved, but it has never been so applied as to hold that because the law of procedure gave no remedy or action that, therefore, no right exists.

The theory of our law is that every man possesses certain rights, even though the law of procedure may not provide that the violation of these rights is actionable. This is also the theory of the common law, the Roman law and the modern civil law. (1 Bl. Com. 56, 123; Savigny on Obligations, Brown's Abridgment, §§ 5–11.) Remedies or causes of action or forms of action may be bounded by territorial limitations, but *rights*, generally speaking, are not so circumscribed. Thus into whatever jurisdiction a man may go he has the right to his life, his liberty and his property. It may be that in certain jurisdictions the law of procedure is such that no redress can be given when these rights are violated, but the rights exist nevertheless. In the case under consideration the plaintiff had a right to his property even though it was situated in another state. The trespass by the defendant upon that property and the burning down of the buildings thereon was a wrong and because of this wrong the plaintiff has a *right* to redress. Owing to the defects in the law of procedure that right was not actionable, where timely objection was made, in this jurisdiction, prior to the enactment of section 982-a. This statute was enacted to give a remedy for such a wrong. The *right* to redress existed before the statute, but generally speaking it was not actionable. The statute, therefore, does not create a substantive right, but prescribes a remedy for a pre-existing right, which, before it was enacted, could not in all cases be redressed in this jurisdiction. As the statute creates only a remedy or cause of action it should under well-settled principles be given a retroactive effect.

In the *British South Africa Co.* v. *Campanhia De Mocambique* (*supra*) the House of Lords adhered to the rule of the common law which found expression in the case of *Doulson* v. *Matthews* (*supra*), which nullified the attempt of Lord M ANSFIELD in *Mostyn* v. *Fabrigas* (*supra*) to establish a rule in accord with reason and justice. In the opinion of Lord H ERSCHELL in that case it is said that the grounds upon which the courts have hitherto refused to exercise jurisdiction in actions of trespass to lands situated abroad "were substantial and not technical." In this it is evident that the writer of that opinion is distinctly opposed to the view expressed by Chief Justice M ARSHALL in *Livingston* v. *Jefferson* (*supra*) and by Chief Judge C ULLEN in the *Brisbane Case* (*supra*).

The *British South Africa Co. Case* (*supra*) merely reiterates the rule of the common law as Chief Justice M ARSHALL recognized and applied it, and decided that the rule of procedure adopted under the Judicature Act with regard to local venue, did not confer any new jurisdiction. The rule of procedure under the Judicature Act, under consideration in that case, was entirely different from the statute which is embodied in section 982-a of the Code. Moreover, as pointed out in the opinion of Lord H ERSCHELL it has more than once been held that orders or rules under the Judicature Act "are rules of procedure only, and were not intended to affect, and did not affect, the rights of parties." The rule or order under the Judicature Act referred to in this case is different in its language, scope and purpose from the remedial statute embodied in section 982-a of our Code of Civil Procedure. In so far, therefore, as the *British South Africa Company Case* (*supra*) is relevant to this discussion, it is so only as to the rule which prevailed prior to the enactment of section 982-a of the Code, which rule it was the purpose of this statute to change.

Moreover, there is another reason which strongly indicates that the legislature intended section 982-a as a reme-

dial statute which should be given retroactive effect. That section not only authorizes a remedy for injuries to foreign real estate but it also provides for a remedy for the breach of contracts or covenants relating thereto. In so far as this statute relates to a remedy for a breach of contract in relation to foreign real estate it is merely declaratory of the existing law. Before the enactment of section 982-a such an action could be maintained in the courts of this state. As Chief Justice MARSHALL said: '' They (the courts) have, without legislative aid, applied this fiction to all personal torts, and to all contracts wherever executed. To this general rule, contracts respecting lands form no exception. It is admitted, that on a contract respecting lands, an action is sustainable wherever the defendant may be found; yet, in such a case, every difficulty may occur which presents itself in an action of trespass. An investigation of title may become necessary. A question of boundary may arise, and a survey may be essential to the full merits of the cause; yet these difficulties have not prevailed against the jurisdiction of the court. They have been countervailed, and more than countervailed by the opposing consideration, that if the action be disallowed, *the injured party may have a clear right without a remedy in a case where the person who has done the wrong, and who ought to make the compensation, is within the power of the court.*'' (*Livingston* v. *Jefferson, supra,* at p. 664.)

It will not, I think, be argued that the enactment of this statute took away the right which previously existed to bring an action in this state for the breach of a contract relating to foreign real estate which occurred prior to the enactment of section 982-a. As to such actions, therefore, this statute is clearly retroactive. I think that the legislature intended by this statute to place the remedy for injuries to foreign real estate upon an equality with the remedy for a breach of contract relating to such real estate. It seems unreasonable to assume that the legislature intended that that part of the statute which relates

to breach of contracts relating to foreign real estate
should be retroactive but that that part of the statute
which relates to injuries to foreign real estate should not
be retroactive.  Such an interpretation would be as arti-
ficial as the original distinction between local and transi-
tory actions.  In many cases these artificial distinctions
are so embedded in our law that no matter how unjust
and technical they may be effect must be given to them
by the courts.  A different situation is presented when
the courts have pointed out, as they have repeatedly done
in this class of cases, the technicality and injustice of the
rule and the legislature has deliberately endeavored to
correct the injustice.  In such cases the statute should
be interpreted in the remedial spirit that actuated the
legislature rather than in the technical spirit which gave
rise to the mischief which the legislature has sought to
remedy.  Nor can I agree with the intimation contained
in the prevailing opinion that it would follow as a conse-
quence of giving this statute a retroactive effect that a
remedy would thereby be provided "for ancient and for-
gotten wrongs."  Section 982-a does not give a remedy in
every case but only "whenever such an action could be
maintained in relation to personal property without the
state."  When this provision of the statute is read in con-
nection with section 390-a of the Code of Civil Procedure
I think it becomes evident that such an action could not
be brought when it was barred by the law of the state
where the injury was committed.  If the statute is con-
strued to be retroactive it merely makes actions for
injuries to foreign real estate subject to the same Statute
of Limitations that now applies to actions for injuries to
personal property and to actions for breach of contracts
relating to foreign real estate.  I can hardly assume that
this is such a consequence as to have deterred the legisla-
ture from making the statute retroactive as to injuries to
foreign real estate.  In any event the question whether
the statute should be given a retroactive effect cannot be

affected by the Statute of Limitations which may be applicable to such an action. The questions certified to us are based upon the issue raised by the demurrer to the complaint upon the grounds of insufficiency and misjoinder of causes of action. These questions make no reference to the question of the Statute of Limitations or whether if a cause of action is alleged in the complaint it is barred by the Statute of Limitations. The questions whether the complaint states a cause of action and whether there has been a misjoinder of causes of action should be determined without regard to whether that cause of action is barred by the Statute of Limitations. It is time enough to determine that question after it has been held that the complaint states a cause of action and the Statute of Limitations has been pleaded as a defense. (*Crane* v. *Powell, supra.*) If we assume that under our decision in *Reilly* v. *Sicilian Asphalt Paving Company* (170 N. Y. 40) the injury to the personal property and to the real property by a single act of the defendant gave rise to two causes of action, it is nevertheless true that both causes of action arose out of the same transaction, and, as they do not require different places of trial, they are not improperly united.

Section 982-a of the Code is a remedial statute and it should be liberally construed so as to effectuate its purpose, instead of placing upon it a construction which perpetuates as far as possible the technical and unjust rule it was designed to abrogate.

In my opinion the order of the Appellate Division should be affirmed, and the 1st, 2d, 3d, 4th and 5th questions answered in the affirmative, and the 6th and 7th questions answered in the negative, and in this view of the case it is unnecessary to answer the 8th question.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN and HOGAN, JJ., concur with CARDOZO, J.; SEABURY, J., reads dissenting opinion, and CHASE, J., concurs.

Order reversed, etc.