# Acme-Jones Company v. Ellis Milling Company, et al.

(Decided November 13, 1923.)

## Appeal from Ohio Circuit Court.

1. Sales—Express Repudiation Equivalent to Breach.—An express repudiation of a contract to purchase flour is equivalent to a breach.

2.  Sales—Order Fixing Price of Necessaries Presumed Not to Apply
    to Existing Contracts.—An order of the President putting into
    effect Act Cong. Aug. 10, 1917 (U. S. Comp. Stats. 1918, U. S.
    Comp. St. Ann. Supp. 1919, section 3115⅛e, et seq), purporting to
    fix prices for certain necessaries, is presumed not to apply to
    existing contracts.

3.  Contracts—Option to Cancel Held Not to Destroy Mutuality of
    Contract.—A contract for the sale of flour to be shipped at buyer's
    option prior to a stated date is not of a unilateral nature, or does
    not lack mutuality, because after the expiration of the time within
    which shipment must be made seller is given the right to cancel
    any unshipped portion.

4.  Contracts—Construction Giving Contracts Operative Effect Pre-
    ferred.—Where there is ambiguity or uncertainty as to the mean-
    ing of contracts, they should be so construed as to give them
    some operation, rather than to make them wholly abortive.

A. D. KIRK, J. G. SACHS, ERNEST WOODWARD and CLARENCE
BARTLETT for appellant.

BARNES & SMITH and J. S. GLENN for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellant is a corporation and a wholesale grain
dealer in Louisville, and appellees are partners doing
business at Hartford, Ky., under the firm name of Ellis
Milling Company, the partners being W. E. Ellis and his
wife, Bertha A. Ellis.

On July 28, 1917, the parties entered into the follow-
ing written contract:

"MEMORANDUM OF CONTRACT IN DUPLICATE
July 28, 1917.

"ACME-JONES Co., Incorporated,

"Sell and Ellis Milling Co., of Hartford, Ky., buy the
following articles subject to terms of contract printed
hereon.

"Ship to Ellis Milling Co., at Hartford, Ky., ship via
L. H. & St. L., L. & N.    Date of shipment, prior Nov. 1st,
1917.

| No. of Packages or tons of feed | Size | Brand | Barrels | Price per bbl. | | C. A. F. |
|---|---|---|---|---|---|---|
| | | | 500 | " | " ton | |
| 1000 | | No. 98 Best Winter patent | | | 12.45 | Hartford |
| | | If taken in 24's or wood—15c higher | | | | |

(Form approved by Southeastern Millers' Association and St. Louis Millers' Club).

"PAYMENT, draft against B/L on arrival of goods, through Citizens Bank. To be shipped at buyers' option, prior Nov. 1st, 1917, at the end of which time, or any subsequent thirty-day period, the seller shall have any or all of the following privileges:

"A.—Cancelling contract or any unshipped portion thereof.

"B.—Making shipment in the recognized standard package of buyer's market, or reselling goods for buyer's account or retaining goods, charging buyer with difference between contract and market price and all accrued carrying charges with an additional charge of 10 cents per barrel on flour and 25 cents per ton on feed to cover expense of sale.

"C.—Continuing the life of the contract at carrying charges, payable on demand of 5 cents per barrel flour and 25 cents per ton feed, for each 30 days or fractional part thereof.

"FAILURE OF SELLER to ship on specifications within fourteen days from receipt of shipping instructions unless prevented by conditions unavoidable and beyond control, shall entitle buyer to any or all of the following privileges:

"A.—Cancel the part of contract upon which default has been made by seller.

"B.—Buy in the open market similar quantity and of flour or feed upon which seller had defaulted for seller's account.

"C.—Continue that part of contract on which default has been made at a credit of 5 cents per barrel flour and 25 cents per ton feed, for each thirty days or fractional part thereof after the fourteen-day period aforesaid.

"PRICE C. A. F. (cost and freight) to destination agreed upon, which means all deliveries on the contract are at mill with freight to be allowed to shipping point.

"If for any reason flour or feed is sold or bought in the open market, the buyer or seller, as the case may be, is to be charged with the loss or credited with the profit, such loss or profit becoming due and payable at once. Failure to make a shipment according to contract will be ground for the refusal of such shipment only, and not entire contract.

"As every purchase contemplates fundamentally an actual delivery of the goods, the parties to this contract herewith agree and bind themselves (no verbal modification to alter contract) to the above terms and contitions."

On July 31st they entered into a similar contract for the purchase of 500 additional barrels of flour at the price of $12.65 per barrel, to be delivered prior to December 1, 1917, with a provision, however, for delivery up to December 31st by paying at the rate of 10 cents a barrel higher.

Under the terms of the first mentioned contract 50 barrels were shipped to appellees and paid for; but on the 6th day of September, 1917, appellees notified appellant in writing that they elected to and did thereby cancel the unperformed part of the first contract and the whole of the second contract. In response to that appellees were notified by letter that appellant would not consider the cancellation of the contracts, except at the difference in market values, and that it stood ready to deliver the flour in accordance with the contract.

The matter stood thus until after the periods of expiration when appellant brought this action under the terms of the contracts for the difference in the contract price and the market value at the expiration of each of the contracts.

The answer was in three paragraphs, the first being a traverse. The second paragraph alleged that certain material parts of the agreement between the parties was by their mutual mistake and oversight omitted from the written contract, and that by such mutual mistake and oversight of each of the parties certain material things appearing in the face of the written contract were placed therein. Among other things alleged to have been by mistake left out of the written contract was that plaintiff had agreed to give as a part of it the exclusive right to the sale and handling of a certain brand of flour at Hartford, Ky., to defendants, and that the plaintiff had violated this provision of the contract by shipping on or about September 1st, 1917, to another dealer at Hartford some of the same flour, such other dealer being a competitor of defendants.

The third paragraph sets up and relies upon the provisions of the act of Congress of August 10, 1917, known as the Lever or Food Control Act.

On the trial after the introduction of the plaintiff's evidence the court directed a verdict for defendants, and the plaintiff's motion for a new trial was thereafter over-ruled, and it has appealed.

On the trial the execution of each of the contracts was shown, and they were each offered in evidence; the express repudiation thereof by defendants on the 6th of September, 1917, was shown which was equivalent to a breach, and the market price of the flour at each term of expiration was shown thereby fixing the basis for a calculation as to appellant's loss; and in addition it was shown that at all times between the date of each contract and the expiration thereof appellant was able, willing and desired to perform its contract and deliver the flour, and that at all such times it either had on hand or had contracted for sufficient flour of that grade to comply not only with these two contracts, but with all other outstanding contracts of its customers.

From these facts we assume the trial court must have been of opinion that the act of Congress referred to furnished the defendants a good defense to the action and absolved them from complying with the terms of their contracts. Or the court may have been of opinion, as is argued in this court, that the contracts in question were unilateral, and therefore unenforceable by either party.

Several sections of the Lever act have been declared unconstitutional and void, although not the precise one here involved. See Standard Chemicals & Metal Corp. v. Waugh Chemicals Corp. (N. Y.), 14 A. L. R., and note.

In that case as in this a pre-existing contract was involved, and the court, after considering various features of the act and declaring them unenforceable, proceeded to discuss whether or not the act had any application to pre-existing contracts. In discussing that feature, and in referring to certain orders of the President putting into effect the provisions of that act, it is said:

"If, however, we assume that the order validates the statute, and in turn is validated by it, I am unable to construe it as applying to pre-existing contracts. There is a presumption that statutes not affecting remedies are directed to the future. Winfree v. Northern P. R. Co., 227 U. S. 296, 57 L. Ed. 518, 33 Sup. Ct. Rep. 273; Jacobus v. Colgate, 217 N. Y. 235, 111 N. E. 837, Ann. Cas. 1917E. 369.; Isola v. Weber, 147 N. Y. 329; 41 N. E.

704. The presumption must apply, at least with equal force, to orders of the President.''

We concur fully in the soundness of that conclusion, and it therefore results that the lower court should have sustained the demurrer to the third paragraph of the answer, and that same presents no defense to this action.

But it is argued the contract is unilateral and contains no mutuality of obligation because the seller by its terms is given the right to cancel all or any unshipped portion of the flour. An examination of the instrument will disclose this right so given may be only exercised by the 'seller after the expiration of the contract period, that is, at a time when the buyer no longer has the right, under the terms of the contract, to order the flour to be shipped. Each of the contracts fixes a definite period within which the shipments must be made, and after the expiration of that time the seller is merely given the right to cancel any unshipped portion thereof. During the life of the contract, that is, during the period within which the buyer may direct the shipment, the seller has no more right to cancel the contract, or any part of it, than has the buyer—in fact not as much—for the buyer is expressly given the right to cancel during the life of the contract any shipment upon which default has been made by the seller for a period of fourteen days.

But it is argued that the purchaser may have ordered out every barrel of the flour within the stipulated time, and yet if it is not shipped within that time the seller has the option to cancel the contract; in other words, that as the shipping is the duty of the seller an order of shipment made toward the end of the period may te purposely delayed by the seller, and it is thereby placed in his power to virtually cancel the contract. It is sufficient to say in answer to this that the rights of the parties in such a situation are not presented by this record, and it appears to be unnecessary to determine here whether if shipments were directed to be made by the buyer within the stipulated period, and were not actually made by the seller within that time, he might thereafter decline to make them.

A careful inspection and study of the contracts fails to convince us they are of a unilateral nature or lack mutuality. The rule is that contracts will, if there be any ambiguity or uncertainty as to their meaning, be so construed as to give them some operation rather than to make them wholly abortive.

For the reasons given we are of the opinion that the trial court erroneously directed a verdict for the defendant, but all other questions are expressly reserved. .

The judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.