L. Barron Hill, J.
This is a motion by defendant, City School District of the City of Long Beach (hereafter called the “ School District ”) to dismiss plaintiff’s 26-page amended and supplemental complaint. The motion is made on the ground that the complaint fails to state facts sufficient to constitute a cause of action between the parties.
The essence of the allegations of the complaint appear to be as follows: The plaintiff filed a petition in bankruptcy under section 77 of the Bankruptcy Act (H. S. Code, tit. 11, § 205) on March 1, 1949. Thereafter no taxes were paid on its real property in the counties of Nassau and Suffolk. For the years 1949 and 1950 plaintiff’s properties within the city of Long Beach were assessed by the Board of Assessors of Nassau County as $497,150. The trustees objected to this and other assessments of plaintiff’s property in Nassau on the grounds of overvaluation, inequality and illegality and commenced proceedings to review the assessments. The proceedings were settled and on March 29, 1954 orders were entered in this court fixing the assessments for the two years at $165,113. The orders directed the various assessing officers in the county to adjust their records and to issue new tax bills based on the new assessment. The School District had previously, for the years involved, levied its tax on plaintiff’s properties based on the original assessments.
On April 30, 1954 plaintiff conveyed to defendant, City of Long Beach (hereafter called the “ City ”), part of its properties within the city. The Board of Assessors of Nassau, at plaintiff’s request apportioned the assessment of $165,113 and allocated $72,385 as the value of the property conveyed to the City. The board also issued apportioned tax bills for county and State taxes in arrears and school taxes in arrears beginning in 1951-52. A similar request was made of the School District, but no action was ever taken by it for that purpose. It is alleged that the School District has refused to take such action. Thereupon, at the closing of title, plaintiff deposited with the Title Guaranty & Trust Company, who insured the title for the City, the full amount of taxes, interest and penalties claimed by the School District to be due covering all of its properties in the School District. This amount totalled $30,560.46 pursuant to an agreement between plaintiff and said title company.
*245 On November 5, 1954 plaintiff and the City were served with notices that their properties had been sold to the School District by the tax collector with a notice to redeem which expired on February 8,1955. Plaintiff commenced this action on February 4,1955 to correct the assessments of the School District and the taxes levied thereon and for an apportionment between it and the City. It sought a temporary injunction on February 8, 1955 restraining the School District from taking further action on the tax sales until this action was determined.
However, on February 8, 1956 the Title Guaranty & Trust Company, over the express protest of plaintiff, paid to the School District the full sum of taxes, penalties and interest due on plaintiff’s and the City’s property amounting to $31,465.56, transferred from its agency account to its general account the $30,560.46 deposited with it by plaintiff and billed plaintiff for the balance of $905.10 which plaintiff refused to pay.
Plaintiff served an amended and supplemental complaint alleging the foregoing and seeks the relief originally requested plus a direction that the $31,465.56 be refunded by the School District.
The School District, now, contends that since the taxes have been paid there is no longer any jural relationship between it and the plaintiff and, therefore, the complaint must be dismissed.
It is the generally accepted rule of law that payment of a tax, under protest, can be recovered where the assessment is illegal or erroneous. If the payment is voluntary, however, the rule is otherwise (see McCann v. Village of Lindenhurst, 174 Misc. 14). Sufficient has been alleged here to show that, as regards plaintiff, payment was not voluntary. On the trial plaintiff must make its proof.
The point involved appears to be clearly controlled by People ex rel. Ambroad Equities v. Miller (289 N. Y. 339) denying a similar motion in certiorari proceedings to review an over-assessment and for a refund. There the realtor commenced the proceedings to review, thereafter sold the property to a purchaser who paid the taxes and who was not a party to the proceeding. The Court of Appeals upheld Special Term’s denial of the motion to dismiss brought on the ground that the realtor was not a person aggrieved by the assessment or the real party in interest since he no longer had any interest in the refund, saying at page 342: “If the assessment is vacated or reduced after the tax has been paid, refund must be made to the person entitled thereto. Even where the final order in a certiorari proceeding directs that the refund should be paid to one of the parties to the proceedings, other parties to that pro *246 ceeding may thereafter show a superior equitable right to a refund. (People ex rel. 1200 Madison Ave. Corp. v. Miller, 287 N. Y. 685.) We express no opinion upon the question whether or not the appellant may be able to show a right to the refund. If there is a dispute whether the appellant or some other person is entitled to it, that dispute must be decided in appropriate proceedings in the Supreme Court, to which all interested persons are parties.”
On this ground, therefore, the motion must be denied. It is the court’s suggestion that the title company should be made a party to the action for the purpose of determining any issues concerning a refund.
A more substantial basis for dismissing the complaint, however, is raised by the School District. It quotes the following from section 3503 (subd. 1) of the Education Law which applies to this action: ‘ and no person shall be entitled to any reduction in the valuation of such property, ás so ascertained, unless he shall give notice of his claim to such reduction in writing to the trustees or board of education of the district before the tax list shall be made out.”
It is contended that the complaint fails to allege that such notice was given but only alleges protest to the county assessing officers and proceedings taken on their refusal to act.
Since July 1,1955 section 3503 (subd. 1) of the Education Law, as amended, specifically eliminates notice to the trustees or board of education and prescribes that any reduction in assessment brought about by a proceeding under article 13 of the Tax Law is binding on the school board.
Plaintiff argues that the amendment is retroactive and applies to this section. In this connection it is supported by the legislative history. The amendment was added by chapter 535 of the Laws of 1955 and the memorandum of the State Education Department states:
“ The changes are in the main editorial and represent clarifications rather than substantive changes.
‘ ‘ Each bill section is accompanied by an explanatory note.
“ This is a department measure ”, (1955 Legislative Annual, p. 165.)
The note to the applicable section changing the procedure to be followed reads: ‘ ‘ Note — This amendment codifies and clarifies existing law. The sentence eliminated from this subdivision refers to § 3504 and is therefore transferred to that section (see L. 1864, ch. 555, title 7, §§ 67 and 68; see § 3 below).”
*247 If this was an ordinary school district, the determination could probably be made on the basis of this legislative history, and the current amendment could be applied retroactively (cf. Laird v. Carton, 196 N. Y. 169, 171, 172).
However, between 1924 and 1951 the School District occupied a unique position among the school districts of the entire State. It operated under a special charter (L. 1924, ch. 535). Whether alone or not among the school districts of Nassau, it, nevertheless, did not return its uncollected taxes to the County Treasurer and receive payment by him for any deficiencies (cf. Education Law, §§ 3527-3529). The School District, itself, financed and collected its own arrears, a complete system of sale being incorporated in its charter.
Therefore, any reduction in the assessed valuation, used for the purpose of determining the taxes levied by the School District, was of utmost importance to this district. It did not get paid by the County Treasurer regardless of the value of the assessment or the collection of the tax. This system was changed in 1951 by chapter 741 of the Laws of 1951. The historical note, thereto, makes it explicit that, as to the City of Long Beach School District, collections and assessments prior to 1951 shall be controlled by chapter 535 of the Laws of 1924.
It is asserted, as argument, by the School District that the article 13 proceeding was compromised and settled by the plaintiff herein and County of Nassau at a reduction of 64% without any judicial determination. This is, of course, permissible and binding on the parties. Here, however, it is sought to bind someone not a party to the proceeding and who has a decided financial interest in the outcome.
Under such circumstances, it seems necessary that there have been compliance with section 3503 of the Education Law as it existed prior to 1955.
Absent such compliance, plaintiff is without a remedy. In such situations, statutes cannot be applied retroactively (cf. Jacobus v. Colgate, 217 N. Y. 235, 240).
I find, therefore, that the present complaint fails to state facts sufficient to constitute a cause of action and it must be dismissed. Plaintiff may have leave to serve an amended complaint within 20 days of service of the order herein with notice of entry.
Settle order.