In the Matter of the Application of HERMAN BERKOVITZ and SIMON SPIEGEL, Appellants, for an Order Directing that the Arbitration Provided for in the Certain Contract in Writing Entered into Between the Petitioners and ARBIB & HOULBERG, INC., Respondent, on November 14, 1919, Proceed Pursuant to the Provisions Thereof and of the Arbitration Law.

First Department, July 2, 1920.

**Arbitration — agreement to arbitrate differences arising through contract of sale construed — right of party to such agreement to rescind the same without liability — Arbitration Law not retroactive.**

A contract for the sale and purchase of hides to be of various specified quantities and weights, with a provision that claims in regard thereto " shall not invalidate this contract, but shall be settled amicably or by arbitration in New York in the usual manner; in no case can the goods be left for the seller's account," provides for the arbitration of any dispute which may arise between the parties in relation to the goods, whether it be a question of quality or quantity delivered to the seller.

But where such agreement to arbitrate was made before the Arbitration Law went into effect on April 19, 1920, the agreement was revocable at the will of either party thereto without incurring any liability save as the right was limited by sections 2383–2385 of the Code of Civil Procedure, whether the submission be considered to have been made informally or under said Code.

The Arbitration Law which went into effect April 19, 1920, is not retroactive and has no application to an arbitration agreement made before said date, and hence either party to such agreement may refuse to submit to arbitration or to be in any way bound thereby.

APPEAL by the petitioners, Herman Berkovitz and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 2d day of June, 1920, denying a motion for the appointment of an arbitrator.

*Steckler & Weitzner* [*David Steckler* of counsel and *Emil Weitzner* on the brief], for the appellants.

*Prince & Nathan* [*Sidney J. Loeb* of counsel and *Leon M. Prince* on the brief], for the respondent.

*Julius Henry Cohen, amicus curiæ.*

DOWLING, J.:

On November 14, 1919, at the city of New York, the petitioners, composing the firm of Berkovitz, Goldsmith & Spiegel, acting by their duly authorized agent, Bernstein & Frank, Inc., entered into an agreement in writing with Arbib & Houlberg, Inc., for the sale to the latter corporation of about 19,000 Patna goatskins. The skins were divided in quantities according to grade or quality, and the average weight per 500 skins; 13,800 skins were to be " primes," whereof 6,000 were to weigh 550 pounds per 500 skins, 1,500 to weigh 450 pounds, 1,300 to weigh 400 pounds, 2,000 to weigh 700 pounds, and 3,000 to weigh 875 to 900 pounds; 2,700 skins were to be " seconds," whereof 200 were to weigh 1,050 to 1,100 pounds per 500 skins; 500 to weigh 750 to 850 pounds, and 2,000 to weigh 500 pounds; 1,000 were to be " thirds;" 1,000, " fourths;" and 500, " kids." No weights were specified for the last three grades. The agreement contained the following clause: " Skins to be the usual quality of their kind, and claims in regard thereto shall not invalidate this contract, but shall be settled amicably

or by arbitration in New York in the usual manner; in no case can the goods be left for the seller's account."

The goods arrived in the port of New York on April 12, 1920, and after inspection and examination were rejected by the purchaser as not in accordance with the contract, and it refused to accept them and to pay therefor. Thereupon the sellers offered to submit the differences between. them and the purchaser to arbitration, but the latter refused so to do, and also " refused to perform said contract providing for arbitration, which refusal to so arbitrate was after said offer was made, and the refusal to accept said goods was after said law went into effect."

A motion was thereupon made, based upon the petition of the appellants, that an order be made, pursuant to the provisions of the Arbitration Law, directing that the arbitration provided for in said agreement proceed, and that the court designate and appoint an arbitrator or umpire, who should act under the said contract as arbitrator with the same force and effect as if he had been specifically named therein.

The answering affidavits set forth that the agreement in question was made before the Arbitration Law took effect, and that there was no provision in that law making it retroactive, so as to apply to contracts entered into before that time; further, that the provision for arbitration referred to the quality of the skins only, whereas the goods were of different quantities and weights from those provided for in the contract. It is alleged that variations in weight from those fixed by the agreement are important, as, if the skins are overweight, they are taken from larger and older animals and are inferior in grade. If the goods are underweight, they are also inferior. On inspection, it is claimed to have been found that the goods were so inferior as to be unmerchantable. A detailed list of the weights of the various grades of skins, as found on inspection, is annexed to the affidavit.

The learned court at Special Term denied the motion, upon the ground that the agreement for arbitration referred only to the quality of the skins, and did not include other questions in dispute between the parties. I think this was erroneous. A fair interpretation of the provision in question is that it provided for the arbitration of any dispute which might arise

between the parties in relation to the goods. It first declares that the skins contracted to be sold were to be the usual quality of their kind. It next provides that " claims in regard thereto " shall be settled amicably or by arbitration. The " thereto " should not be limited to " quality;" it refers to the subject of the preceding part of the sentence, " skins." The parties thus agree that the skins furnished shall be the usual quality of the kind specified in the agreement, and that any claim that may be made in relation to the skins — that is, for their failure to comply in any particular with the contract requirements — shall not invalidate the contract, but such claims shall be settled amicably or by arbitration in New York in the usual manner. This interpretation is confirmed by the final clause: " in no case can the goods be left for the seller's account." This applies, no matter what the objection to their defects may be. Thus the sentence consistently refers to skins, not merely to the quality thereof, and provides for arbitration, no matter what the ground for rejection of the goods may have been.

The agreement thus providing for arbitration in New York " in the usual manner," how was it to be effectuated? At the time the contract between the parties was executed, whether an agreement to arbitrate was made informally or pursuant to the provision of chapter 17, title 8, of the Code of Civil Procedure (§§ 2365–2386, inclusive), such agreement was revocable at the will of either party thereto, without incurring any liability therefor, save as the right was limited by sections 2383, 2384 and 2385 of the Code of Civil Procedure, in the case of submission to arbitration under that title. It has always been the established law of this State that agreements in advance to oust its courts of jurisdiction are a nullity, and entirely illegal and void. This principle found its latest complete and unequivocal acceptance in the Court of Appeals in *Meacham* v. *Jamestown, F. & C. R. R. Co.* (211 N. Y. 346).

When the agreement in question was made, therefore, the arbitration clause therein contained was revocable at any time by either party, without incurring any liability by so doing. The purchaser had a right, under the laws of this State, to refuse to submit to arbitration or to be in any way bound thereby.

The Arbitration Law (Consol. Laws, chap. 72; Laws of 1920, chap. 275) became a law April 19, 1920. This was after the making of the agreement between the parties and the arrival of the goods, but before their rejection. Under that law, it is provided by section 2: " A provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract, or a submission hereafter entered into of an existing controversy to arbitration pursuant to title eight of chapter seventeen of the Code of Civil Procedure, shall be valid, enforcible and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

By section 7, sections 2383, 2384 and 2385 of the Code of Civil Procedure are repealed. Section 3 provides a method for enforcing agreements to arbitrate, under which the application now before us was made. It begins as follows:

" Remedy in case of default. A party aggrieved by the failure, neglect or refusal of another to perform under a contract or submission providing for arbitration, described in section two hereof, may petition the Supreme Court, or a judge thereof, for an order directing that such arbitration proceed in the manner provided for in such contract or submission."

It is urged that the Arbitration Law is unconstitutional, because it destroys the right to a trial by jury. But I do not find that question presented here, as in my opinion the Arbitration Law should not be so construed as to be retroactive. It purports to apply to " a provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract," and " a submission hereafter entered into of an existing controversy to arbitration pursuant to title eight of chapter seventeen of the Code of Civil Procedure." The fair and reasonable construction of the law, it seems to me, is that it was intended to apply, and does apply, only to contracts and submissions which alike were made after the date of its passage. To hold otherwise would be to attribute to the Legislature an intent to deprive one party to an agreement of his absolute right to terminate it at will, to give to the other party an irrevocable right where theretofore it was revocable at the will of the other party, and to create a new remedy for the enforcement of this new right.

Such a result should not be deemed to have been intended by legislative action, without clear and distinct language to that effect, and I am unable to find such language in the new law. The general rule is that statutes are to be construed as prospective only, and that it takes a clear expression of the legislative purpose to justify a retroactive application. (*Jacobus* v. *Colgate*, 217 N. Y. 240.)

I am of the opinion, therefore, that the Arbitration Law does not apply to provisions for arbitration under the laws of this State, contained in a written contract executed prior to the enactment of that law.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., PAGE and GREENBAUM, JJ., concur; SMITH, J., concurs in the result, on the ground that the petition does not specifically allege defect in quality or refusal to arbitrate any difference upon such defect.

Order affirmed, with ten dollars costs and disbursements.