Matter of Jaquan L. (Pearl L.) (2020 NY Slip Op 00213)





Matter of Jaquan L. (Pearl L.)


2020 NY Slip Op 00213


Decided on January 9, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 9, 2020

Richter, J.P., Gische, Webber, Gesmer, JJ.


10500

[*1] In re Jaquan L., et al., Appellants, Pearl L., Petitioner-Respondent, Administration for Children's Services, Respondent-Respondent.


Dawne A. Mitchell, The Legal Aid Society, New York (Claire V. Merkine of counsel), for appellants.
Zachary W. Carter, Corporation Counsel, New York (Diana Lawless of counsel), for Administration for Children's Services, respondent.
Proskauer Rose LLP, New York (Lucas Kowalczyk of counsel), for Pearl L., respondent.



Order, Family Court, Bronx County (Valerie A. Pels, J.), entered on or about May 14, 2018, which denied petitioner's motion to extend kinship guardianship assistance payments for the subject children until they reach the age of 21, unanimously reversed, on the law, without costs, and the motion granted.
Respondent, Pearl L. (grandmother), executed kinship guardianship petitions pursuant to the Subsidized Kinship Guardian Program (KinGap) for her two grandchildren. Pursuant to Social Services Law § 458-b (the statute), the Administration for Children's Services (ACS) and the grandmother were required to enter into and execute Kinship Guardianship Assistance and Non-Recurring Guardianship Agreements (the contract), which provided monthly subsidies for each child (Social Services Law § 458-b[3]). The contract stated that subsidies will be provided until the children turn 18 if the children were under 16 at the time that the contract was executed. However, if the children were older than 16 at the time of execution, the subsidies would continue until the children turned 21, provided that certain statutory conditions were met. When the grandmother executed the contract, her grandchildren were both under 16 years of age. The Family Court approved the guardianship petitions and the children were discharged from foster care.
The grandmother subsequently moved pro se to extend KinGap subsidies for both children until they reach 21 years of age. While the motion was pending, the Legislature amended the statute to expand the legal definition of a "prospective relative guardian" and made subsidies available to all children until the age of 21 when certain conditions are met regardless of the child's age at the time the contract was executed (see S 4833-A, L 2017, c 384, § 2). The Legislature, however, was silent as to the retroactivity of the law. After reviewing the parties' submissions, the court denied the motion and declined to apply the statute retroactively. This appeal ensued, and we now reverse.
As an initial matter, the order is appealable as of right, because it is an order of disposition that terminates the children's guardianship placement once the children reach the age of 18 and terminates the proceeding itself (see Matter of Geraldine B. v Louis B., 32 AD2d 808, 809 [2d Dept 1969]; Matter of Taylor v Taylor, 23 AD2d 747 [1st Dept 1965]). In any event, this Court can deem a notice of appeal from the denial of the motion a request for permission to appeal and we would grant that request (see Matter of Mariama J. [Jainaba C.], 160 AD3d 593 [1st Dept 2018], lv denied 31 NY3d 912 [2018]).
An exception to the general principle that statutes are to be applied prospectively unless the language expressly, or by necessary implication, requires otherwise is commonly made for "remedial legislation or statutes governing procedural matters" (Majewski v Broadalbin-Perth [*2]Central School District, 91 NY2d 577, 584 [1998]). If a statute is remedial in nature, it "should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible, and therefore should be accorded retroactive effect" (Lesser v Park 65 Realty Corp., 140 AD2d 169, 173 [1st Dept 1988]). "Other factors in the retroactivity analysis include whether the Legislature...conveyed a sense of urgency" (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]). Because the amended statute in this case is silent as to its retroactive application, we turn to the legislative history to discern the intent of the Legislature and the purpose of the amended statute (see Matter of Duell v Condon, 84 NY2d 773, 783 [1995] ["the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal"].
A review of the legislative history supports the conclusion that the amended statute is remedial in nature. The Sponsor's Memorandum states that the purpose of the amendment is to "rectify an anomaly" in the original legislation (Sponsor's Memorandum, SB 4833, L 2017, ch 384). Moreover, we can discern from the legislative history that the intent was to remove the disparity created between foster/adoptive parents and guardians since foster/adoptive parents are able to obtain subsidies notwithstanding the age of the child at the time of fostering or adoption.
The mere fact that the amended statute is remedial in nature is not determinative as to whether it should be applied retroactively (see Majewski, 91 NY2d 577, 584 [1998] ["[c]lassifying a statute as remedial' does not automatically overcome the strong presumption of prospectivity"]). As such, a remedial amendment will only be applied retroactively if it does not impair vested rights (Matter of Rudin Mgt. Co. v Commissioner of Dept. of Consumer Affairs of City of N.Y., 213 AD2d 185, 186 [1st Dept 1995]; McKinney's Cons Laws of NY, Book 1, Statutes § 54).
Contrary to ACS's argument, the amendment does not create a new entitlement; rather it expands "existing benefits to a class of persons arbitrarily denied those benefits by the original legislation" (Matter of Cady v County of Broome, 87 AD2d 964, 965 [3rd Dept 1982], lv denied 57 NY2d 602 [1982]). There is no dispute that had the children been adopted by the grandmother and remained with her under the auspices of foster care, or had the grandmother proceeded with guardianship after they turned 16, they would have been entitled to subsidies until the children turned 21.
Moreover, ACS's contention that the amendment should not be applied retroactively because it increases ACS's liabilities is unconvincing. The Sponsor's Memorandum states that "even if federal reimbursement is foreclosed for a limited number of youth, it would clearly be cost-effective to make the KinGap permanency option available to the youth in order to expedite permanency for them and permit their exit from foster care" (Sponsor's Memorandum, SB 4833, L 2017, ch 384). This memorandum also states that the amended statute will not have a fiscal impact on the State (id.). Although we recognize that there might be some financial impact despite the sponsor's statement, such impact would be minimal given the limited number of children that are affected by the disparities created by the original law. Even assuming arguendo that the amended statute impaired ACS's vested contractual rights or increased its financial liabilities, impairment of a contract will be upheld if the impairment "is reasonable and necessary to accomplish a legitimate public purpose" (Association of Surrogates & Supreme Ct. Reporters Within the City of New York v State of New York, 79 NY2d 39, 46 [1992]).
ACS further argues that the amendment was intended to apply prospectively because the amended statute's effective date was postponed until 60 days after the federal government approves the amendment. We are not persuaded by this argument because the statute also states that the amendment "shall be effective immediately" (NY Senate Bill 4833-A, L 2017, ch 384 § 3) and that this amendment "shall not take effect until sixty days following the date that the United States Department of Health and Human Services, Administration for Children, Youth and Families approves a Title IV-E state plan amendment regarding the provisions of this act that are eligible for Title IV-E reimbursement" (id. at § 3[b] [emphasis added]). Similarly, the Sponsor's Memorandum states that the amendment "shall take effect 60 days after the U.S. Department of Health and Human Services has approved a Title IV-E State Plan Amendment for federally reimbursable expenditure" (Sponsor's Memorandum, SB 4833, L 2017, ch [*3]384)(emphasis added)). It is evident by the language cited that the amendment was made with the understanding and acknowledgment that the State will not be reimbursed by the Federal Government for monies given to this specific class of children, or to any child that is under the age of 16 when a contact is executed. Since the amendment indicates a sense of urgency, this further supports the conclusion that the amendment should be applied retroactively (see Gleason, 96 NY2d 117, 122).
Lastly, ACS argues that this Court does not have jurisdiction to extend the subsidies because only the parties to the contract can modify the contract. This argument is misplaced because the issue here is not whether the subsidy should be extended; rather, it is whether the statute should be applied retroactively.
Accordingly, "the remedial purpose of the amendment should be effectuated through retroactive application" (id. at 123). Holding otherwise will not further the statute's purpose because the disparity created by the original law would still exist, which will lead to an absurd legal conclusion.
We have reviewed ACS's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 9, 2020
CLERK