People v Jefferson M.Q. (2025 NY Slip Op 25224)

[*1]

People v Jefferson M.Q.

2025 NY Slip Op 25224

Decided on October 16, 2025

Criminal Court Of The City Of New York, Bronx County

Bahr, III, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on October 16, 2025
Criminal Court of the City of New York, Bronx County

People of the State of New York,

against
Jefferson M.Q., Defendant.

Docket No. CR-007805-25BX

Harold E. Bahr, III, J.

While the Legislature required prosecutors to exercise due diligence to obtain discovery, only the Court of Appeals in People v Bay [FN1]
defined due diligence ("Bay due diligence"). Then the Legislature amended Article 245 of the Criminal Procedure Law to include its own definition of due diligence ("2025 due diligence"), effective August 7, 2025. In this case, before August 7, 2025, the court conducted a discovery conference with the parties, directing the prosecution to turn over to the defendant some Internal Affairs Bureau ("IAB") attachments and to submit for the court's in-camera review other IAB attachments. The prosecution never obtained the IAB attachments, and the defendant then moved to dismiss the accusatory instrument for the prosecution's discovery lapse. When examining the People's due diligence to obtain discoverable material, does the court apply the Bay or the 2025 due diligence definition?
The New York City Police Department arrested the defendant on March 22, 2025, and the court arraigned the defendant the following day for driving while intoxicated and other related charges. The People filed a superseding information on April 10, 2025, and its certificate of compliance on June 13, 2025. Three days later, the prosecution filed a supplemental certificate of compliance.
In this case, on August 1, 2025, the court conducted a discovery conference with the parties and ordered the prosecution to turn over specific IAB log attachments for a police officer to the defense and an IAB log attachment for a different testifying officer to the court for in-camera inspection. Finally, the court adjourned the case to October 10, 2025, for the court's decision on the omnibus motion.
By the defense motion of August 22, 2025, the defendant moved to deem the People's certificate of compliance invalid and their statement of readiness illusory; to dismiss the case for the People's failure to comply with statutory speedy trial; and, in the alternative, to suppress the defendant's statements and police observations. On September 11, 2025, the People emailed the court, asking for an extension to file their opposition papers, citing their failure to obtain the IAB attachments. The court denied the request. On September 12, 2025, the prosecution filed its [*2]opposition papers. The defendant timely filed his reply papers on September 19, 2025 and submitted additional attachments on September 24, 2025.
As to defendant's motion to deem the certificate of compliance invalid, the defendant argued that the People failed to exercise due diligence to obtain the IAB log attachments, rendering the statement of readiness illusory. The defendant contended that, because courts disfavored retroactive application of statutes, the court must analyze due diligence under the Bay factors. The People opposed countered that they acted with due diligence as defined by the 2025 amendments.
A statute is not necessarily applied retroactively just because it applies to conduct predating its enactment or upsets expectations based on prior law.[FN2]
Nor does a statute necessarily operate retroactively "merely because it draws upon antecedent facts for its operation."[FN3]
Procedural rules "may often be applied in suits arising before their enactment without raising concerns about retroactivity."[FN4]
Conversely, a statute has "retroactive effect," if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."[FN5]
The long-standing principle that emerges is that "'[t]he procedure in an action is governed by the law regulating it at the time any question of procedure arises.'"[FN6]

For example, the Court of Appeals in Raynor v Landmark Chrysler [FN7]
held that amendments to the Workers' Compensation law required private carriers to deposit into the Aggregate Trust Fund the present value of an unscheduled permanent partial disability award for injuries incurred years earlier. While the private insurer argued that requiring such a deposit for the uncapped, pre-amended awards was impermissibly retroactive, the Court rejected the retroactivity argument: "The fact that the award may relate to an injury that occurred prior to the enactment of the statute does not render it retroactive" because the amendments covered specified awards made after its passage.[FN8]

Here, the present-law-governs-current-procedures principle controls here without need for further retroactivity analysis. The 2025 amendments did not impair any rights, result in an ex post facto violation, increase a party's liability for past conduct, or impose new duties on past transactions. Instead, the 2025 amendments were mere procedural changes not affecting any substantive legal right. For example, the Legislature in 2025 defined due diligence, a term that it had left undefined before, and gave the courts factors to determine whether the prosecution acted with due diligence. The amendments also changed the procedure by which the defense could challenge the prosecution's certificate of compliance. Instead of raising a challenge "as soon as practicable," defendants now must challenge the certificate of compliance within 35 days of its filing, absent good cause. Thus, the procedural amendments did "not affect or impair any act done," and the amendments apply to pending cases where the prosecution filed the certificate of compliance before August 7, 2025.[FN9]

The statute's plain language bolsters the conclusion that the 2025 amendments regulate current procedures, regardless of when the certificate of compliance was filed. When interpreting statutes, courts must ascertain and effectuate the Legislature's intent.[FN10]
The best evidence of the Legislature's intent is plain and unambiguous language.[FN11]
Unlike the 2019 discovery enactment that provided only that "[t]his act shall take effect January 1, 2020," the 2025 amendments specified that the amendments shall "apply to all criminal actions pending on [August 7, 2025] and all actions commenced on or after such date." The Legislature plainly required the amendments to apply to "pending" and future actions. "Pending" means "remaining undecided; awaiting decision."[FN12]
Clearly, here, not only is the action unresolved because the court has not entered a judgment or other final disposition, but the court has not yet decided the issue of the [*3]certificate of compliance's validity. Thus, the criminal action is plainly pending.
Giving effect to all the text further supports applying the 2025 due diligence factors to certificates of compliance filed before August 7, 2025. Statutes usually are applied prospectively absent express contrary language.[FN13]
Similarly, statutory amendments are generally applied prospectively unless the Legislature says otherwise.[FN14]
Here, the Legislature expressly applied the amendments to pending and future cases, which suggests that courts should apply the amendments to previously filed certificates of compliance in pending actions. Said differently, applying the statute only prospectively would render "apply to all criminal actions pending" superfluous because statutory interpretation rules would axiomatically apply the amendments to future actions. And "apply to all criminal actions pending" must mean something different than actions filed on or after August 7, 2025. Thus, the Legislature emphasized that the amendments would apply to present actions, regardless of when the certificate of compliance was filed, and to future actions.
Alternatively, the amendments are remedial, and remedial statutes are applied retroactively.[FN15]
Remedial statutes are procedural or "designed to correct imperfections in a prior law, by giving relief to [an] aggrieved party.'"[FN16]
Remedial statutes can also "rectify an anomaly."[FN17]
And a "remedial and procedural statute is ordinarily applied to procedural steps in pending actions, and is given retrospective effect insofar as the statute provides a change in the form of remedy or provides a new remedy for an existing wrong."[FN18]
The retrospective application applies also to amendatory statutes.[FN19]
Here, the amendments do not affect a defendant's substantive right to received discovery well in advance of trial. Instead, they merely change the procedure to evaluate whether a certificate of compliance is valid.
People v King [FN20]
does not compel a different conclusion. There, the majority concluded that the "sea change" of repealing Article 240 and replacing it with Article 245 was not remedial; thus, the new discovery law would not invalidate a statement of readiness filed before the new law's effective date. By contrast, the 2025 amendments were not a "sea change" but [*4]remedial, for the reasons discussed above. Thus, the court should apply the 2025 due diligence standard to certificates of compliance filed before August 7, 2025 when deciding their validity.
Applying the 2025 due diligence, the court must "look at the totality of the party's efforts to comply" with Article 245 by examining the following non-exhaustive, mandatory list of factors:
1) the efforts made by the prosecutor to comply with the Article 245 requirements;
2) the volume of discovery provided and the volume of discovery outstanding;
3) the complexity of the case;
4) whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed;
5) the explanation for any alleged discovery lapse;
6) the prosecutor's response when apprised of any allegedly missing discovery;
7) whether the belated discovery was substantively duplicative, insignificant, or easily remedied;
8) whether the omission was corrected;
9) whether the prosecution self-reported the error and took prompt remedial action without court intervention; and
10) whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.[FN21]
The court analyzes the mandatory factors in order. The People made perfunctory efforts to comply with Article 245. The court arraigned the defendant on the misdemeanor complaint on March 23, 2025 and released the defendant. The court arraigned the defendant on the superseding information on May 1, 2025. The prosecution first requested discovery on May 8, 2025—7 days after arraignment—and then followed up on May 21. The People filed their certificate of compliance and statement of readiness on June 13, 2025—43 days after the defendant's arraignment on the superseding information. The People missed the statutory deadline of 35 days after arraignment without explanation.[FN22]
After the court's August 1, 2025 ruling that the People were to turn over to the defense one set of IAB attachment and to submit a different set to the court for review, the People made no effort to obtain the attachments until September 9 or 10, 2025 [FN23]
—39 to 40 days after the court's order.
The court cannot conclude with certainty that the disclosed material—about 115 documents—was larger than the two sets of IAB attachments because the prosecution had yet to produce the material. But the court believes that the previously disclosed material was likely greater than the ordered material.
The driving-while-intoxicated case was not complex because there was only one incident resulting in misdemeanor charges.
The defendant, on June 26, 2025, in an email made the People aware of the missing attachments for the IAB logs.[FN24]
On July 16, 2025, after hearing nothing from the prosecution, the defendant sent a follow-up email. The prosecutor replied that day: "[P]lease excuse the delay. The last few weeks have been hectic. I will send over the responses within the next few days."[FN25]
The People did not send the promised response until July 28, 2025,[FN26]
stating, "Regarding the underlying attachments in the IAB logs for the testifying officers, it is the People's position that the logs pertain to collateral matters, and therefore do not pertain to the subject matter of the case and are not discoverable." The court noted that the prosecutor did not say that he did not have the attachments. Then, on August 1, 2025, the court ordered the People to get the IAB-log attachments, which the People did not request from law enforcement until, at least, September 9, 2025. Thus, the People knew of the contested logs since June 26, 2025.
The People never explained the discovery lapse or the rationale for not timely complying with the court's order, other than to assure the court that the prosecution was working on it.
As noted above, after the court ordered the People to procure the missing IAB-log attachments and the People waited at least 39 days to request the material. The People's response to the court's order was subpar.
Without providing the missing items, the People cannot prove that the material "was substantively duplicative, insignificant, or easily remedied." While the People opined in their opposition papers that the details in the IAB log were a sufficient substitute for the log's attachments, the court is unpersuaded because the People have yet to submit the attachments for the court's review, and the court is not bound by the prosecution's vague and unsubstantiated assurances.
The People have yet to comply with the court's order, so they have not corrected the error. Moreover, in the email exchange in July, the prosecution unilaterally chose not to disclose the IAB-log attachments.
From the analysis above, the evidence clearly shows the People never corrected the error and certainly did not self-correct the error.
Finally, the defendant in his reply papers vaguely asserted that the "defense is prejudiced going into hearings and trial as it does not have the complete narrative for the impeachment [*5]materials." The court is unpersuaded by the defendant's self-serving assurances.
Looking at all the factors (and with no one factor being determinative), the court concluded that People failed to exercise due diligence under the 2025 standard to obtain the at-issue attachments. Not only did the prosecution choose not to disclose the material in July, they waited more than a month after the court's order to request the material. The People should have promptly asked for the attachments to demonstrate due diligence.
Because the People failed to exercise 2025 due diligence to obtain and provide discovery, the court concludes that the People's certificate of compliance was invalid. And because a valid certificate of compliance is a condition precedent or concurrent to a statement of readiness, the court holds the statement of readiness was illusory.
Speedy Trial
Because the People charged the defendant with a misdemeanor punishable by more than three months' jail, the prosecution had to be ready for trial within 90 days after the action's commencement.[FN27]

March 23, 2025 to May 1, 2025
The court arraigned the defendant on March 23, 2025, and adjourned the case for conversion and compliance. The adjournment is chargeable to the People. (39 days charged).
May 1, 2025 to June 23, 2025
The court arraigned the defendant on the superseding information and adjourned the case to June 23, 2025, for discovery compliance. Although the prosecution filed and served a certificate of compliance, statement of readiness, and automatic disclosure form on June 13, 2025, the court concluded the certificate of compliance to be invalid. Because the validity of a statement of readiness is tethered to the validity of a certificate of compliance, here, the statement of readiness was illusory because of the invalid certificate of compliance. While the People filed a supplemental certificate of compliance on June 16, 2025, they did not file a subsequent statement of readiness. The adjournment is chargeable to the People. (53 days charged for a total of 92 chargeable days).
June 23, 2025 to August 1, 2025
The court adjourned the case for a discovery conference, which is excludable pursuant to CPL 30.30 (4) (b). (0 days charged for a total of 92 chargeable days)
August 1, 2025 to October 3, 2025
After conducting the discovery conference, the court adjourned the case for the court's decision on the defendant's omnibus motion. This period is excludable pursuant to CPL 30.30 (4) (a). (0 days charged for a total of 92 chargeable days)
Based on the court's rulings and calculations, the People exceeded their allotted speedy trial time.
ORDERED that the defendant's motion to deem the certificate of compliance invalid and statement of readiness illusory is granted; and it is further
ORDERED that the defendant's motion to dismiss the accusatory instrument pursuant to CPL 30.30 (1) (b) is granted; and it is further
ORDERED that the Clerk of the Court shall stay sealing for 30 days from the issuance [*6]of this decision.
ORDERED that any other relief the defendant requested is denied as academic.
DATED: October 16, 2025
BRONX, NEW YORK
Hon. Harold E. Bahr, III, J.C.C.

Footnotes

Footnote 1:41 NY3d 200 (2023).

Footnote 2:Landgraff v Usi Film Prods., 511 US 244, 269 (1994) (holding that a "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment"); Gottwald v Sebert, 40 NY3d 240, 258 (2024), citing Landgraff.

Footnote 3:Cox v Hart, 260 US 427, 435 (1922).

Footnote 4:Landgraff, 511 US at 275.

Footnote 5:Landgraff, 511 US at 280.

Footnote 6:Matter of Clayton v Clement, 33 NY2d 386, 390 (1974), quoting Lazarus v Metropolitan El. Ry. Co., 145 NY 581, 585 (1895).

Footnote 7:18 NY3d 48 (2011).

Footnote 8:Raynor, 18 NY3d at 57; see e.g. Bradley v. Sch. Bd. of City of Richmond, 416 US 696 (1974) (holding a newly enacted statute authorizing attorney's fee to a prevailing party in a school desegregation case could be used in a pending action to support a fees claim for legal services rendered before the statute was enacted); Thorpe v. Hous. Auth. of City of Durham, 393 US 268, 278—279 (1969) (concluding that a new agency policy imposing "a very simple notification procedure" that a housing authority had to follow prior to evicting a tenant, which did not alter the lease terms or take away the housing authority's legal ability to evict, was applicable to an eviction proceeding commenced before the policy was issued but not yet completed); see also McKinney's Cons Laws of NY, Statutes § 51, Comment ("A statute is not retroactive, however, when made to apply to future transactions, merely because such transactions relate to and are founded upon antecedent events").

Footnote 9:See also McKinney's Cons Laws of NY, Statutes § 93, Effect of repealing statute upon existing rights ("The repeal of a statute or part thereof shall not affect or impair any act done, offense committed or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected.")

Footnote 10:McKinney's Cons Laws of NY, Statutes § 92 (a); Riley v County of Broome, 95 NY2d 455, 463 (2000).

Footnote 11:People v Galindo, 38 NY3d 199, 203 (2022).

Footnote 12:Black's Law Dictionary (10th ed), pending.

Footnote 13:Majewski v Broadalbin-Perth Cent. Sch. Dist., 91 NY2d 577, 584 (1998).

Footnote 14:McKinney's Statutes, § 52; see also Thomas v Bethlehem Steel Corp, 63 NY2d 150 (1984).

Footnote 15:Simpson v International Bank, 14 NY2d 281, 289 (1964), citing McGee v International Life Ins. Co., 355 US 220, 224 (1957).

Footnote 16:Asman v Ambach, 64 NY2d 989, 991 (1985), citing Cady v County of Broome, 87 AD2d 964, 965 (3d Dept 1982); see also Sutherland Statutory Construction § 60:5 (8th ed., 2024).

Footnote 17:Jaquan L. v Pearl L., 179 AD3d 457, 459 (1st Dept 2020), citing a Sponsor's Memorandum.

Footnote 18:Shielcrawt v Moffett, 294 NY 180, 188 (1945).

Footnote 19:Asman, 64 NY2d at 990 (concluding an amended procedural statute should be applied retrospectively).

Footnote 20:42 NY3d 424 (2024).

Footnote 21:CPL 245.50 (5) (a).

Footnote 22:CPL 245.10 (1) (a) (ii).

Footnote 23:Three times in their opposition papers the People described their efforts as: "The People have since [presumably after August 1] attempted to retrieve [the ordered material] with the most recent attempt being on September 10, 2025"; " following the August 1, 2025 COC Conference, [the prosecution] made a request for said underlying attachments The most recent request was done on September 9, 2025"; "the People took steps to retrieve said material following the COC Conference, made attempts to reach out and retrieve the [material] [and] reached out again on September 9, 2025." The court drew an adverse inference against the People for their failure to provide the specific dates between August 1 and September 9 or 10 that they requested for the ordered material.Namely, the court concluded that the People made no effort to get the material before September 9, 2025.

Footnote 24:Defense Exhibit A.

Footnote 25:Ibid.

Footnote 26:Ibid.

Footnote 27:CPL 30.30 (1) (b).