People v Davila (2025 NY Slip Op 51883(U))

[*1]

People v Davila

2025 NY Slip Op 51883(U)

Decided on November 25, 2025

Criminal Court Of The City Of New York, Bronx County

Goodwin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 25, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
J. Davila, Defendant.

Docket No. CR-006732-25BX

For the Defendant:
Octavia Ewart
The Bronx Defenders
For the People:
Bronx ADA Paige Dececco

David L. Goodwin, J.

Discovery in a criminal case must be shared with the defense in a timely fashion, but sometimes the "sharing" part of the process goes awry. That apparently happened here. Pointing to extensive and well-documented difficulties arising out of the discovery exchange, defendant J. Davila [FN1]
argues that the People's failure to actually share all of the discovery they intended to turn over shows a lack of the due diligence required by law, invalidating their certificate of compliance and requiring dismissal of the accusatory instrument on speedy trial grounds.
On these facts, however, the alleged mix-ups are not enough to undermine the People's diligence, in large part because the People actually possessed and intended to provide almost all of the discovery in question. Nor does the one clear omission—a set of missing activity logs, which the People provided a few days after being notified by the defense—tip the scales in favor of dismissal. Because the People exercised reasonable diligence and good faith overall, the branch of the motion seeking dismissal is DENIED.
I. Background
The Charges
Davila is charged with petit larceny (P.L. § 155.25) and other offenses. He and a codefendant allegedly removed copper pipe from the roof of a Bronx apartment building. The accusatory instrument was sworn by Officer Bello,[FN2]
was also listed as the arresting officer on the NYPD court verification and arraignment card.
The Certificate of Compliance
Davila was arraigned March 10. The People filed their discovery and readiness materials on June 5, about 87 days later.
In their certificate of compliance (COC), the People represented that they had disclosed 37 categories of material, including body cameras; crime-scene photographs; the activity logs of Officers Bello, Acosta, Valentin, Cruver, Maldonado, and Pink; and Giglio materials for Officers Bello, Acosta, and Cruver. The People planned to call Officers Maldonado, Bello, and Cruver to testify at trial. See Automatic Disclosure Form at 2. 
The same day the People filed their discovery materials and declared ready, the assigned ADA emailed defense counsel and the Bronx Defender's discovery email address to indicate that the People's COC, statement of readiness, and automatic disclosure form had been filed and served. Defense's Mot., Ex. A. However, at least some of the material had been inadvertently shared with an email address other than the correct Bronx Defenders discovery address. See People's Resp., Ex. L.
Post-Readiness Conferral, Missing Discovery, and Sharing Difficulties
One day later, on June 6, defense counsel responded to the assigned to ask that "any and all discovery" be shared with the Bronx Defender's discovery email address and defense counsel's email address "if [it was] not already." Id., Ex. B.
It apparently had not been. About twenty days later, on June 27, counsel again wrote the assigned ADA to flag that a folder entitled "shared w defense 3.21.2025" contained only statement notice materials, and another folder called "shared w defense 3.26.2025" contained only a supporting deposition and affidavits of service.[FN3]
Id., Ex. C. In other words, defense counsel was not in receipt of the underlying police-generated discovery.
The assigned ADA responded on July 8, observing that because the Bronx Defenders discovery liaison email address used earlier might not have been correct, she was resharing with the correct address. People's Resp., Ex. A at 1. The ADA also stressed that the folder "shared w. defense 6.5.2025" had been shared with defense counsel individually, and included "all known discovery . . . as of that date." Id. The ADA asked defense counsel to confirm whether she could see those materials. Id.
Defense counsel replied on August 18. By that point, counsel had reviewed the COC, and confirmed access to the discovery that had been re-shared July 8.
However, according to defense counsel, some material still had not been transmitted. Counsel still did not have access to the body camera footage, for instance, and asked the ADA to again confirm that it had been shared with bxddiscovery@bronxdefenders.org. Counsel also observed that one page of the witness notification unit document appeared to be missing. Defense's Mot., Ex. D at 1.
Defense counsel also flagged four undisclosed items not listed in the COC: property vouchers/invoices, a property clerk invoice worksheet, body camera audit logs and metadata, and attachments to IAB logs. Defense's Mot., Ex. D at 1.
The assigned ADA responded two days later, on August 20. Regarding the body cameras, the ADA confirmed that both the general Bronx Defenders discovery liaison address and defense counsel individually were on the "share" list. The ADA nevertheless reshared all body camera files. People's Resp., Ex. B at 1. As to the other materials, the ADA (1) reshared the audit trails in case they had not been shared earlier; (2) confirmed that one page of the witness notification form had accidentally been excluded and would now be shared with minor redactions, while emphasizing that all of the relevant contact information had been disclosed earlier in a different document; (3) confirmed that the property vouchers and clerk invoice worksheet did not exist; and (4) argued that IAB log attachments were not discoverable because they did not relate to the subject matter of the case. People's Resp., Ex. B at 1.
One more significant round of pre-motions email conferral took place in early September. On Friday, September 5, defense counsel alerted the People that activity logs for five officers—Officers Acosta, Valentin, Cruver, Maldonado, and Pink—appeared to be missing, and that Giglio material, IAB logs and attachments, and audit trails had been listed in the certificate of compliance but were not provided. People's Resp., Ex. D at 1. Counsel also flagged that some of the materials provided appeared to relate to another case or incident. Id.
The ADA responded on Tuesday, September 9—two business days later—to indicate that (1) the audit trails had been shared; (2) the underlying IAB logs and attachments were (in the People's view) not discoverable; and (3) Giglio material was not required for non-testifying officers, and defense counsel had not provided any other reason to think the information was needed. People's Resp., Ex. H at 2.
Significantly, the ADA also conceded that the People had never shared activity logs for Officers Acosta, Valentin, Cruver, Maldonado, and Pink, despite listing all five of those officers' logs (alongside Officer Bello's) in the COC as having been disclosed. While the logs had been sent by email back in April, they had never been downloaded from the email or included in the discovery packet. Id. The ADA apologized, corrected the error, and disclosed the logs. Id.
Motion Schedule
This motion schedule was set September 10. But the record reflects that access issues persisted, with the parties emailing throughout September to address access issues for the body cameras. See People's Resp., Ex. J at 1—2.
II. The Parties' Dismissal Arguments
In the relevant branch of his counseled omnibus motion, Davila argues that the People's COC was invalid, and the accusatory instrument subject to dismissal on speedy trial grounds, because the People failed to exercise due diligence in discharging their discovery obligations. In addition to citing the outstanding Giglio materials, Davila points to the generalized belated disclosure of all other discovery, referring to the rolling disclosure difficulties recited above. He also relies on the fact that the activity logs of five officers, including two testifying officers, had [*2]not been disclosed at all in a timely fashion. Defense's Mot. at 8—12.
In response, the People generally defend their diligence on the merits, pointing to the "robust" discovery package—the product of outreach from March and April—that was provided to the defense. People's Resp. at 13.[FN4]
They also emphasize that they timely corrected the errors identified by the defense, such as by fixing an incorrect email address and resharing material that did not appear to have been transmitted. Id. at 14—15. The witness notification unit form was duplicative, id. at 16, and the IAB materials and additional "Giglio" documents were not discoverable, id. at 20—22.
However, the People concede that the missing activity logs "had mistakenly been omitted from the OneDrive folder containing police generated discovery" that was initially shared in June. Id. at 17. The People stress that the logs were nevertheless "promptly disclosed" within four days of the omission being flagged by the defense; the People point to defense counsel's own delay, as the omission was flagged more than three months after the filing of the initial COC. Id. at 17.
The People also argue more broadly that the defense has not shown the prejudice required to obtain dismissal. Id. at 22. With regard to the activity logs, the People reemphasize that any prejudice was minimal because defense counsel did not request those logs until approximately three months after the People filed their certificate of compliance. Id. at 24.
In reply, Davila largely reiterates his arguments, focusing on the delayed disclosure of police-generated discovery and the non-disclosure of impeachment material. Defense's Reply at [*3]5—7. He does not mention the activity logs in his reply or address the People's defense of their diligence with regard to the logs. 
III. Legal Standard
In a case like this one, where the top count is a class A misdemeanor, the People must be ready for trial within 90 days. C.P.L. § 30.30(1)(b). If they are not ready within that 90-day window, the accusatory instrument must be dismissed. C.P.L. § 170.30(e); People v. Labate, 42 NY3d 184, 190 (2024).
Under the current discovery laws, the People must comply with their discovery obligations before declaring readiness for trial. See C.P.L. § 30.30(5)(a). The People do so by, among other things, filing a COC. If the People's COC is later deemed invalid, any declaration of readiness is deemed illusory and the § 30.30 clock continues to run, requiring dismissal if over 90 days have elapsed. See People v. Bay, 41 NY3d 200, 213 (2023).
A COC is invalid if the People have not exercised due diligence and good faith in fulfilling their discovery obligations. C.P.L. §§ 30.30(5)(a)—(b), 245.50(6).[FN5]
Factors relevant to diligence include:
the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
C.P.L. § 245.50(5)(a). These factors must be assessed holistically, rather than line-by-line, with no one factor or shortcoming being determinative. Id. § 245.50(5)(b); People v. Cooperman, 225 AD3d 1216, 1220 (4th Dept. 2024). The People bear the burden of establishing their own diligence. People v. Bay, 41 NY3d 200, 213 (2023).
IV. Discussion
As the record makes plain, the disclosure process was far from smooth, and Davila focuses on that turbulence in his motion. But as explained below, the relevant statutory factors still weigh in favor of the People, who both possessed and intended to disclose almost all police-generated discovery within the 90-day speedy trial period and who worked alongside the defense in rapidly fixing any of the alleged mistakes. And while the activity logs stand out as an unforced error—one that the People should have fixed on their own initiative once the discovery problems were brought to their attention—the belated disclosure of the logs does not, standing [*4]alone, requiring invalidating the COC.
At the outset, the People undertook reasonable efforts to comply with discovery requirements. Their efforts to do so began well within 35 days of the case's commencement, and they at least intended to disclose copious discovery before the 90-day window closed.
It is also not entirely clear that the ongoing disclosure problems were actually caused by the People. The record reflects that there was at least one instance where the People shared discovery with the wrong Bronx Defenders institutional address, and there is no doubt that defense counsel was unable to access much of the discovery for sustained periods. But at the same time, the apparent solution in many of these cases was for the People to "reshare" the discovery—to do the same thing they did before—which at least suggests that the problem might have been outside of their control. There is also no apparent question that defense counsel was personally served with the various discovery links. So because the source of the error is not clear from the record, the People can be partly excused from not systematically fixing it upon the defense's initial report; from the People's end, there may have been no apparent error (with one important exception discussed below).
Even if it were otherwise, trial courts, including this one, have generally concluded that "technical mistakes in providing discovery" that the People already possess "do not require invalidating a certificate of compliance if diligence is otherwise established." People v. Goggins, 86 Misc 3d 1201(A), 2025 NY Slip Op. 50808(U), at *4 (N.Y.C. Crim. Ct., Bronx Co. 2025) (collecting cases). Here, assuming without deciding that the technical disclosure shortcomings were appropriately attributable to the People, the People clearly intended to share the relevant discovery within the 90-day period, and thought they had done so.
The People also responded promptly when apprised of the missing material and were generally able to fix the errors. And with the exception of the 11-day delay in responding to defense counsel's first email inquiring about missing discovery—which encompassed a holiday weekend—the People's response time was generally measured in low-single-digit business days.
The belatedly disclosed discovery does not alter this assessment. First, while the missing page of the witness notification unit form should have been disclosed earlier, Davila does not meaningfully dispute the People's assertion that the page contained information that was "substantively duplicative," C.P.L. § 245.50(5)(a), of material already disclosed.
The five missing activity logs are a much closer call. This is the single area where nondisclosure was not the result of technical difficulties; rather, the People forgot to download the logs from an April 2025 email. Thus, unlike the other material discussed above, the logs never were in the discovery folders that the People sent to the defense.
It is also more difficult here to set aside the People's failure to discover the problem on their own initiative. Once it became clear that there were broad, systemic issues in conveying discover to the defense, the People should have rechecked the works from top to bottom to ensure that all relevant discovery was where it should have been—especially the activity logs of officers who might testify. See People v. Othman, 85 Misc 3d 1240(A), 2025 NY Slip Op. 50392(U), at *2 (N.Y.C. Crim. Ct., Kings Co. 2025) (Torres, J.) ("A diligent prosecutor performing their due diligence would have noticed the activity logs were missing."); People v. Crosse, 84 Misc 3d 1205(A), 2024 NY Slip Op. 51361(U), at *3 (N.Y.C. Crim. Ct., Kings Co. 2024) (Glick, J.) (classifying activity logs as "substantial, important missing discovery"). It is true that the People were not specifically notified of the missing activity logs until much later, but that does not provide much of a shelter.
However, any shortcoming here is counterweighed by a lack of apparent prejudice to the defense and the People's swift response. The People persuasively argue that the defense could not have been significantly prejudiced by the delay itself, because Davila did not alert the People that the logs were missing until September 5—months after the People declared ready, and significantly after the otherwise "missing" police-created discovery was provided. See C.P.L. § 245.50(5)(a) (requiring consideration of whether the "prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial"). Davila does not push back on this argument in his reply—indeed, he does not mention the activity logs at all—so while there might have been plausible rebuttals, he does not raise them. See Clark v. Sweeney, No. 25-52, 607 U.S. &mdash, 2025 WL 3260170, at *1 (Nov. 24, 2025) (discussing the party presentation principle).
And while activity logs can often be of importance to a case, Davila does not argue that they were so here. Officer Bello's role in the case is clear, but his logs were timely disclosed, and the body cameras of all of the officers were also in (or, at least, intended to be in) the initial set of disclosures. While it probably remains the People's burden to show lack of substantive prejudice, the record does not establish whether those activity logs were substantively duplicative or otherwise cumulative of information already disclosed. Thus, to the extent this issue would tip in favor of the defense, it does not do enough here to outweigh the other factors.
Finally, Davila argues that the People did not disclose impeachment material for all officers who were "involved" and had an "active role" in the case. Defense's Mot. at 10. But the People need not turn over impeachment material on officers who are not testifying witnesses. See People v. Henderson, 237 AD3d 853, 854 (2d Dept. 2025); People v. Cooperman, 225 AD3d 1216, 1219 (4th Dept. 2024). But see People v. Vallejo, 82 Misc 3d 582, 584—85 (N.Y.C. Crim. Ct., Bronx Co. 2023) (Bowen, J.) (cautioning the People against overly strict reliance on the impeachment-only rationale). To the extent Davila invokes the other ways this material might be useful beyond impeachment, he makes only a passing reference to this argument, which is otherwise undeveloped, and provides no context through which his request for these materials might be evaluated. Cf. Gerstenbluth v. Credit Suisse Sec. (USA) LLC, 728 F.3d 139, 142 n.4 (2d Cir. 2013) (concluding that an issue mentioned only "in passing" by a pro se litigant was not properly presented for federal appellate review). Nor does he ask for these materials to be turned over. Accordingly, they neither serve to invalidate the COC nor are subject to further disclosure at this time.
* * *
As set forth above, the People exercised due diligence and good faith in discharging their discovery obligations, notwithstanding the issues identified above. Their COC is deemed VALID. Because there appears to be no argument that more than 87 days elapsed if the COC were deemed valid, the branch of the motion that seeks dismissal is DENIED. Davila's request for hearings and other relief is addressed in a form order filed alongside this one. Davila should be arraigned on the information at his next in-court appearance if he has not already been arraigned.
Dated: November 25, 2025
Bronx, NY
David L. Goodwin
Judge of the Criminal Court

Footnotes

Footnote 1:The version of this decision submitted for electronic publication has been lightly redacted to remove certain identifying information.

Footnote 2:For simplicity's sake, this decision uses "Officer" regardless of actual rank or role. No disrespect is intended. 

Footnote 3:These off-calendar filings were acknowledged later than one would expect. For instance, there is no supporting deposition in the court file, and action sheet entries for both the May 6 and June 18 appearances reflect that the matter was not converted. However, at the prompting of the undersigned, the People produced an EDDS receipt for a supporting deposition filed March 26—all well and good, except that the complaint was apparently never recognized as an information and, by extension, the defendant was never arraigned on the information. There also was no on-the-record acknowledgement of the certificate of compliance until July 3, even though it had been filed before the June 18 date.
Neither party flags these issues or ascribes any importance to them. So they are noted simply for the sake of completeness and for the necessity of arraigning the defendant on the next date.

Footnote 4:In their memorandum of law, the People make several representations about when and how they sought discovery. But those representations are found only in the unsworn memorandum of law, and are not anchored to any of the associated exhibits, undermining their use as evidence. See Bisk v. Manhattan Club Timeshare Ass'n, Inc., 118 AD3d 585, 585 (1st Dept. 2014); Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009). Regardless, they are credited for the purpose of this discussion.
Although there was a 15-day bench warrant stay between April 21 and May 6, the People do not invoke any § 30.30 exclusion for that time, as is their burden. See People v. Labate, 42 NY3d 184, 190 (2024); see also People v. Goode, 87 NY2d 1045, 1047 (1996) (requiring the People to "identify" the relevant exclusions "on which they intend to rely" (internal quotation marks and citation omitted)). To the contrary, the People concede the time was chargeable, even though Davila omitted that time from his own § 30.30 calculations. Compare People's Resp. at 26, with Defense's Mot. at 13.
In this unusual circumstance, where the time has been conceded and the People do not invoke any § 30.30(4) exception, the concession ultimately controls. So to the extent the People may have been able to argue that those 15 days were excludable from the § 30.30 count—see People v. Alexander, 67 Misc 3d 126(A), 2020 NY Slip Op. 50373(U), at *1 (App. Term, 1st Dept. 2020)—they have waived, or at least forfeited, any such argument.
Because the COC is valid for the reasons discussed above the margin, the concession does not affect the outcome of this motion. It may, however, be relevant at some point in the future.

Footnote 5:Davila's argument that the pre-August-7 due diligence standard should be applied here—raised implicitly in his motion, see Defense's Mot. at 9, and explicitly in his reply, see Defense's Reply at 4—is rejected, for substantially the reasons set forth in People v. Guevera, 2025 NY Slip Op. 51825(U), at *2 (N.Y.C. Crim. Ct., Bronx Co. 2025); People v. Delvalle, 2025 NY Slip Op 51753(U), at *6 (N.Y.C. Crim. Ct., Bronx Co. 2025); and People v. M.Q., — Misc 3d &mdash, 2025 NY Slip Op 25224, at *2—3 (N.Y.C. Crim. Ct., Bronx Co. 2025) (Bahr, J.).