Matter of Baby Anonymous (2026 NY Slip Op 26019)

[*1]

Matter of Baby Anonymous

2026 NY Slip Op 26019

Decided on February 5, 2026

Supreme Court, New York County

Waterman-Marshall, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 5, 2026
Supreme Court, New York County

In re Baby Anonymous, Plaintiff

Index No. XXXXXX-2025

Petitioners are represented by the Law Office of Jennifer P. Maas, PLLC, [email protected], 694 Motor Parkway, Suite 200, Hauppauge, New York 11788, (212) 860-0120.

Kathleen Waterman-Marshall, J.

This is a proceeding to establish parentage pursuant to Article 5-C of the Family Court Act, commonly known as the Child Parent Security Act ("CPSA"). The CPSA provides a procedure for intended parents of children born via assisted reproduction and surrogacy to obtain an order declaring them to be the legal parents of those children, and for the concomitant issuance of a birth certificate so reflecting (FCA §§ 581-101 to 581-704). The law provides comprehensive, detailed protections for donors, persons acting as surrogate, intended parents, and children born of assisted reproduction and/or surrogacy (id.).
This matter presents with non-typical facts in that the subject child was born before February 15, 2021, the effective date of the CPSA. This Court's decision in Matter of Anonymous (85 Misc 3d 676 [2024]), in which the child was also born prior to the effective date of the CPSA, primarily focused on the 180-day jurisdiction limitation of FCA § 581-206 and not the retroactive application of the CPSA. The Court now more fully addresses retroactive application of the CPSA in matters of undisputed parentage.
BackgroundThe parties concede the facts. Petitioner S., who is married to petitioner M., gave birth to the subject child, D., on XX/XX/16, as the result of assisted reproduction ("IVF") using [*2]anonymously donated sperm. The petitioners were married prior to engaging in assisted reproduction and remain married. They each consented to using assisted reproduction to conceive D., jointly selected the anonymous sperm donor and the IVF doctor, and were otherwise jointly involved in the pregnancy. D.'s birth certificate lists both petitioners as their parents. Importantly, both petitioners confirm that it has always been their intention that they both be the equal legal parents of D. Therefore, the petitioners jointly bring this action under the CPSA for an order declaring petitioner M. to be a legal parent of D.
As noted, the CPSA went into effect on February 15, 2021, approximately four and one-half years after D. was born. Therefore, this Court must determine whether the CPSA may be applied retroactively to their intended parents' petition for an order of parentage.
Retroactive Application of the CPSAThe principles of statutory interpretation addressing whether a statute is to be given prospective or retroactive effect, are long well-settled (see Jacobus v Colgate, 217 NY 235 [1916] [discussing rules related to prospective/retroactive construction of statues]). In general, statutes are "presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated" (In re Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]; Jacobus, 217 NY at 240 [same]).
Two types of statutes are generally given retroactive effect. A statute that constitutes a procedural change, changing the form of an already available remedy, may be applied retroactively (Victor v De Maziroff, 275 AD 69, 74 [1st Dept 1949] citing Jacobus v Colgate, 217 NY 235, 240 [1916] [Cardozo, J.] ["changes of procedure, i.e., of the form of remedies, are said to constitute an exception (to retroactive application), but that exception does not reach a case where before the statute there was no remedy whatsoever"] [emphasis in original]).
A remedial statute may also be given retroactive effect "in order to effectuate its beneficial purpose" (In re Gleason, 96 NY2d at 122 citing Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577 [1998]; Jaquan L. v Peral L., 179 AD3d 457 [1st Dept 2020] [remedial statutes "should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible, and therefore should be accorded retroactive effect"]; Cady v Broome Cnty., 87 AD2d 964, 965 [3d Dept 1982] [law "enacted to rectify an inequity by extending existing benefits to a class of persons arbitrarily denied those benefits by the original legislation, [] is remedial and should be applied retrospectively"]). Such construction, however, is not automatic — a remedial statute will only be applied retroactively "if it does not impair vested rights" (Jacquan L. at 459; Cady at 965). The court also considers additional factors in its analysis, including "whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be" (In re Gleason, 96 NY2d at 122; Majewski at 584 [legislative history informs analysis]; Jacquan at 459 [court considers whether Legislature "conveyed a sense of urgency" and legislative intent]).
While the CPSA provides a procedure for individuals to obtain an order of parentage for children born via assisted reproduction and surrogacy, it does not constitute a procedural change insofar as it does not change the form of an already available remedy, at least to some large extent. Prior to the CPSA, the law recognized parentage by assisted reproduction, but surrogacy agreements were expressly prohibited, creating great uncertainty in the legal parentage of children born by surrogacy even where the genetic mother and birth mother agreed that the [*3]genetic mother was the legal parent (see T.V. v New York State Dept. of Health, 88 AD3d 290 [2d Dept 2011] [addressing request for declaration of maternity of child born by surrogacy, where genetic and gestational parents do not dispute genetic mother's parentage, notwithstanding prohibition of surrogacy contracts under former Domestic Relations Law §§ 122 — 124]). Thus, the intended parents of children born via surrogacy had to engage in complicated, sometimes multiple, court proceedings to establish their legal parentage. The methods employed included adoption under DRL § 110; orders of filiation under FCA Article 5; amendment of the child's birth certificate under Public Health Law § 4138; and petitions for declaratory relief as to maternity (id. [gathering cases granting parentage orders by various methods]). Therefore, the CPSA — which provides a framework for children born of assisted reproduction and surrogacy agreements — is not entitled to retroactive effect as a procedural statute that merely changed the form of a pre-existing remedy, as no such remedy existed because those agreements were prohibited under the prior law.
However, the CPSA is a remedial statute by its express terms:
This legislation is hereby declared to be a remedial statute and is to be construed liberally to secure the beneficial interests and purposes thereof for the best interests of the child (FCA § 581-701).Therefore, it should be afforded retroactive application, unless it impairs vested rights (Jacquan L. at 459; Cady at 965).This Court cannot discern any vested rights that the CPSA impairs. To the contrary, the law protects the rights of intended parents of children born by assisted reproduction and surrogacy, and secures family relationships. The sheer volume of parentage petitions brought in the Supreme Court since February 2021 reflects the beautiful reality and vibrant mosaic of our modern families, and the critical need for clarity to protect the rights of intended parents and their children, as noted in the Assembly Sponsor Memorandum in support of the CPSA:
New York law has failed to keep pace with medical advances in assisted reproduction, causing uncertainty about who the legal parents of a child are upon birth. In many cases, the parentage of children created through donated sperm, eggs and embryos is unsettled or open to attack at the time of the child's birth and thereafter. Confusion or uncertainty regarding the parental rights of donors and intended parents (both genetic and non-genetic) who participate in the conception of the child through assisted reproduction is detrimental to the child and secure family relations. Where children are born to a gestational carrier the parentage of the intended parents may not be recognized under current law. This is not only detrimental to the child; it also causes confusion in many critical situations. For example, a hospital does not know who must give consent when a newborn requires medical procedures.The Child Parent Security Act will provide clear and decisive legal procedures to ensure that children born through third party reproduction have secure and legally recognized parental relationships with their intended parents. The law will make it clear that donors do not have parental rights or obligations and that those rights and obligations reside with the Intended Parents.(Sponsor's Mem, Bill Jacket, 2017 NY Assembly Bill A6959A).In this regard, CPSA carries out a needed reform in the law. Indeed, it directly "rectif[ies] an inequity by extending existing benefits to a class of persons" who were previously denied those benefits, to wit: families created by assisted reproduction and surrogacy (Cady, 87 AD2d at 965). Thus, in order to ensure the widest possible reach of the CPSA's beneficial effects — to protect families and provide them with certainty — it should be afforded retroactive effect (Jaquan L., 179 AD3d at 457).
The legislative history of the CPSA amply supports this conclusion. The Legislature conveyed a "sense of urgency" in promulgating the law: it acknowledged that the New York appellate courts called it "to act to provide much needed clarity to the essential question of who is a parent"; recognized that the "need to answer that call is more important today than ever as increasing numbers of children are being conceived and born through third party reproduction"; and made the CPSA effective within 120 days after it became a law and immediately amended and/or repealed any rule or regulation necessary for its implementation [FN1]
(see In re Gleason at 122 [Legislature's swift action in response to court decisions and immediate effective date of law evinces "a sense of urgency"]; Jacquan at 459). Additionally, the legislative history clarifies the legislative judgment about what the law should be: to "make it clear that donors do not have parental rights or obligations and that those rights and obligations reside with the Intended Parents." It also provides a clear frame-work for determining parentage of children born of assisted reproduction and surrogacy, and comprehensive protections to all individuals involved (Majewski at 584; Jacquan at 459).
These factors establish, and this Court so finds, that the remedial purpose of the CPSA "should be effectuated through retroactive application" (In re Gleason at 123; Jacquan at 461).
Providing the CPSA with retroactive effect does not provide a path for any parent of a child or children born by assisted reproduction or surrogacy prior to February 2021 to obtain an order of legal parentage. The conditions of the statute still must be met. As noted above, the CPSA mandates specific protections to all persons involved in an assisted reproduction and surrogacy arrangement, including donors, persons acting as surrogate, intended parents, and the children of assisted reproduction (FCA §§ 581-101 to 581-307). It sets forth detailed requirements for eligibility to enter into a surrogacy agreement and for the surrogacy agreement itself (FCA §§ 581-401 to 581-409). It addresses the rights of donors and persons acting as surrogates to receive reimbursement for economic losses and for compensation (id. §§ 581-501 and 581-502). It contains a Surrogate's Bill of Rights (id. §§ 581-601 to 581-607).
Petitioners Are Entitled to an Order of ParentageGiven the retroactive application of the CPSA, the petitioners in this action may seek a judgment of parentage for D. under the statute as they are the "intended parents who are each other's spouse" (CPSA § 581-204). In addition, their petition conforms to the requirements of FCA § 581-202(c), to wit: the intended parent has been a resident of New York for at least six months; the gestating intended parent confirmed they became pregnant as a result of assisted reproduction; the intended parent confirmed they consented to assisted reproduction and that consent was presumed due to their marriage to the gestating parented; and the sperm used by the petitioners was donated. As the intended parents reside in New York County, and D. was born in [*4]New York County, this petition is properly brought in New York County (id.).
The record establishes, and this Court finds, that Petitioner M. is an intended parent of D., and it is in the best interests of D. to have security, via an order of parentage, that both petitioners are adjudicated to be their parents, with all the obligations, both societal and legal, that designation carries. The petitioners have raised, cared for, and lived with D. as a family for nearly a decade. In addition, it is in D.'s best interest to issue the proposed order of parentage.
Consequently, pursuant to FCA § 581-202(g), an order of parentage to petitioners shall be issued.
Accordingly, the petition is granted.
DATE: 2/5/2026HON. KATHLEEN WATERMAN-MARSHALL, JSC

Footnotes

Footnote 1:Sponsor's Mem, Bill Jacket, 2017 NY Assembly Bill A6959A.